THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
CHARLES ROBINSON, Defendant-Appellant.

Fifth District    No. 79-493

Opinion filed February 5, 1981.

Robert Agostinelli and Peter A. Carusona, both of State Appellate Defender's Office, of Ottawa, for appellant.

William A. Schuwerk, Jr., State's Attorney, of Chester (Martin N. Ashley and Gillum Ferguson, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. JUSTICE JONES delivered the opinion of the court:

Defendant is a resident of the State of Illinois Department of Corrections prison at Menard. Following a jury trial he was found guilty of aggravated battery upon Tom Bowles, a correctional officer, and armed violence. Judgment was entered only as to the armed violence verdict. Defendant was sentenced to 14 years' imprisonment, the maximum sentence possible under extended term sentencing provisions.

The incident in question occurred in the segregation unit at Menard. According to witnesses for the State, there had been a disturbance in the segregation unit during which fires had been set. Employees attempting to put out the fire were repulsed by thrown objects. When the fire hose was recovered it was discovered that the brass nozzle was missing. A prison tactical unit including Bowles was dispatched to locate the nozzle. During the search members of the tactical unit were struck by human excrement thrown by defendant, who was hiding behind a mattress in his cell. Defendant refused to come to the front of the cell to be handcuffed. When officers opened the cell door, defendant charged the door and struck Bowles, who was in the lead, with the nozzle, which defendant had tied to his wrist. Both Bowles and defendant were injured before defendant was cuffed and taken to the institution hospital.

■■ The first issue raised on appeal is that the trial court erred in requiring that several of defendant's witnesses who were his fellow residents at Menard testify in shackles. The State urges that the issue was waived because defendant failed to file a post-trial motion. Such a motion was filed, but it was withdrawn on the request of defendant. Defendant urges that he made an oral post-trial motion. It appears that defendant actively sought a new trial in his oral comments prior to sentencing and that the trial court was given ample opportunity to order a new trial. It is well established that a general oral motion for a new trial, in the absence of an objection by the State, preserves all errors which appear properly preserved on the record. (*People v. Hammond* (1977), 48 Ill. App. 3d 707, 362 N.E.2d 1361.) No objection to the oral motion appearing, we deem the issue preserved for appeal.

■■ We find no fault with the trial court's decision to permit shackling of the witnesses in question. Our supreme court has condemned the general

policy of shackling prison inmates. (*People v. Boose* (1977), 66 Ill. 2d 261, 362 N.E.2d 303.) However, the inmates in question were not mere inmates. All were housed in the segregation unit at Menard, referred to by defendant at trial as a "jail within a jail" and "a hole," "[b]ack as far a place as [one could] go already." Bowles testified segregation was for residents who could not function in the general resident population, for whatever reason. A Menard incident report form on file in the trial court indicates that in the disturbance surrounding the events in question two of the five witnesses in question struck correctional officers. The instant trial took place less than two months after those events. Also to be considered was the fact that defendant was not shackled at trial. His unrestrained presence posed a substantial security risk even in absence of those witnesses. The trial judge was entitled to consider the threat of concomitant or concerted action on the part of defendant and his witnesses in evaluating the need for shackling those witnesses. In light of *People v. Sullivan* (1977), 48 Ill. App. 3d 787, 362 N.E.2d 1382, *aff'd* (1978), 72 Ill. 2d 36, 377 N.E.2d 17, and *People v. Boose*, cited by defendant, the record must "clearly disclose the reason underlying the trial court's decision for the shackling." (*Boose*, 66 Ill. 2d 261, 267, 362 N.E.2d 303, 306.) We find ample reason in the abovementioned facts to justify shackling these witnesses at trial. Also to be noted is the fact that each of those witnesses testified he was (or was referred to as) a segregation unit resident. This reference was unavoidable since the occurrence in question allegedly occurred in the segregation unit. The fact that they were shackled was merely another indication of that residency. "The jury thus was bound to know that they were dangerous men, whether shackled or not." (*Loux v. United States* (9th Cir. 1968), 389 F.2d 911, 919.) Accordingly, the fact that those witnesses were shackled could not have detracted from the fairness of the trial.

■■ The next issue raised by defendant is the trial court's refusal to instruct the jury per defendant's tendered self-defense instruction. We find no basis for giving such an instruction on the proof in this record. According to the State's witnesses, defendant hid behind a mattress in his cell, from which he threw cupfuls of human excrement through the bars. He refused repeated requests to put his hands through the bars to be handcuffed. When one officer opened the cell door, defendant rushed the opening, striking officer Bowles with the brass fire hose nozzle for which the officers had been searching. Bowles and defendant exchanged further blows before defendant was subdued.

Defendant testified that he was threatened by the officers before they opened his cell, that he feared for his life, and that they rushed inside the cell as soon as the door was opened and beat him senseless without justification. None of defendant's occurrence witnesses claimed to have

seen any physical contact between defendant and the officers prior to the time defendant was taken away from his cell. Defendant notes he did not expressly deny possessing the fire hose nozzle or striking Bowles with it. Indeed, defendant, who conducted his own examination of each witness including himself and conducted his own closing arguments though his court-appointed attorney was present as an advisor, refrained from any mention of the nozzle in his own testimony. He was not cross-examined. Defendant did question residents Michael Isom and Ike Larry as to whether they had seen defendant with the nozzle. Both replied in the negative. Defendant attempted to establish through Isom's testimony that the hose was kept locked in a metal box which was not accessible to the residents. Finally, defendant argued in his closing argument to the jury: "I haven't attempted to hurt that man with no firehose nozzle. * * * That hose is kept in a box with a lock on it." We find, contrary to defendant's assertions on appeal, that defendant did deny striking Bowles with the nozzle.

This court has stated that to justify giving an instruction all that need be shown is a slight amount of evidence in support of the underlying theory of defense. (*People v. Tiller* (1978), 61 Ill. App. 3d 785, 378 N.E.2d 282.) The accused is entitled to the benefit of any defense based on the evidence even though such defense is inconsistent with his own testimony. (*Tiller.*) In the instant case it cannot be said that anyone's testimony showed that defendant struck Bowles out of fear for his own safety. The most that can be said is that the officers' testimony showed the striking, while defendant's testimony showed that he was in fear. Essentially the same evidence was held insufficient to warrant the giving of a self-defense instruction in *People v. Dukes* (1960), 19 Ill. 2d 532, 169 N.E.2d 84. In *Dukes* one officer testified that the defendant drew a gun and shot at him. Defendant testified he did not know the officer was an officer and that defendant drew his own gun to scare the officer when defendant saw the officer begin to draw. Defendant denied firing a shot. We agree with the State that *Dukes* controls the instant case. We find no error here.

Next, defendant contends that the trial court erred in refusing defendant's evidence pertaining to his physical condition after the events in question. Defendant was prevented from examining Karen Anna as to what she observed when defendant was brought to the prison hospital after the events in question. The trial judge sustained the objection of the State's attorney on the ground that that testimony would not be relevant to the incident in the segregation unit. Defendant urged at trial that her testimony was necessary to lay a foundation for introduction of medical reports, which he urged would show that each of two blows to his head fractured his skull and that each was capable of knocking him unconscious. Defendant urges on appeal that that evidence would have shown

that he was struck, not by Bowles with a mace can as stated by Bowles, but rather by another officer with a riot baton while Bowles held defendant down. Thus, defendant urges, the trial court's ruling prevented defendant from attacking the credibility of the officers who testified.

Some additional facts are pertinent. Bowles testified that when defendant charged out of his cell, Bowles sprayed him with mace, which had no apparent effect. Defendant swung the fire hose nozzle against the plexiglas shield held by Bowles, and Bowles' shoulder was struck by either the nozzle or the shield, dislocating Bowles' shoulder. Defendant struck Bowles on the elbow with a second blow from the nozzle. Bowles wrestled defendant to the bed. Bowles placed one hand, covered by a riot glove, on defendant's face, and defendant bit Bowles' finger. Bowles struck defendant three times on the head with the mace can, during which time defendant struck once more with the nozzle, then released the finger. Other officers were then able to handcuff defendant. Bowles testified he has still not fully recovered from injuries to his arm and shoulder.

Bowles estimated the mace can with which he struck defendant was five inches tall, three inches in diameter, and weighed two pounds when full. Another officer compared it in size to a coffee pot. Defendant testified that he was struck on the head, not by Bowles with the can, but by another officer with a riot baton. Officer Ronald Umbdenstock testified that defendant was conscious when taken from his cell and that he walked out and was not carried out. Officer Little testified that when defendant was removed he was conscious and bleeding. Resident Michael Isom testified that defendant was in an upright position when removed, though the witness could not tell whether the officers were holding him up. Residents Isom, Leveison, and Larry all testified defendant was bleeding at that time. None of the residents other than defendant saw what happened inside defendant's cell. Resident Maurice Jones testified that he was in the hospital when defendant was brought in, "hollering," by two officers who were "half dragging him, half carrying him."

■■ In view of the facts above summarized, we fail to perceive how the evidence defendant sought to introduce would have helped his case. True, defendant was entitled to show that the State's witnesses had a motive to testify falsely, in order to cover up an unlawful beating of defendant, by producing evidence of such a beating. (See *People v. Lenard* (1979), 79 Ill. App. 3d 1046, 398 N.E.2d 1054, urged for comparison by defendant.) However, in this case, it was uncontradicted that defendant was struck several deliberate blows to the head with a solid object. Defendant's proof of that fact would tend to corroborate not only his own version of the events in question, but, unlike *Lenard*, also that of the State. The trial court's refusal of that proof did not deny defendant

any practical advantage, the evidence in question having been of such an equivocal nature. Also, we find no practical value in defendant's attempts to prove that any of the blows to his head was capable of rendering him unconscious. Again, that testimony would not have corroborated defendant's case any more than it would the State's. Also, there was testimony regarding defendant's condition when he was taken from his cell. This testimony was certainly more probative of his condition at that time than any conclusions that might have been drawn from Ms. Anna's testimony or hospital records.

What might have helped defendant's case and contradicted the State's version of the events in question was some proof that defendant was struck by a riot baton and not by a cylindrical metal can. That such proof was not forthcoming is revealed in defendant's argument before the trial judge regarding this issue.

> "The medical reports was so, Your Honor, that either one of these licks would have been substantial to knock me completely unconscious without having to deliver the other two to three, whatever was delivered. That's what I intend to show with the medical report. Fractured skull and severe lacerations that I am sure anyone would be able to see that one of those licks would have been sufficient to knock me out and that there was malice involved in the attack on me that day and the medical reports can prove that and any licks capable of delivering enough force to fracture a man's skull is surely enough to knock him unconscious and this was in two fractures, not one, Your Honor."

We conclude that any error in the trial court's ruling excluding the evidence of defendant's medical condition subsequent to the events in the segregation unit was harmless at most. We find no cause for reversal in that ruling.

■■ Next, defendant urges that the cause should be remanded for resentencing because of the trial court's consideration of an improper aggravating factor. At sentencing, the court referred to the instant offense as a violent crime. Then, in a form "Judgment Order," the court checked the aggravating factor, "[t]he defendant inflicted or attempted to inflict serious bodily injury to another person." (See Ill. Rev. Stat. 1979, ch. 38, par. 1005—5—3.2(a)(1).) We regard the reference to an attempt as surplusage since actual harm was charged and amply proved. Defendant maintains that the fact that armed violence involving a Category II weapon is a violent offense is inherent in the fact that the legislature classified it as a Class 2 felony. (Ill. Rev. Stat. 1979, ch. 38, par. 33A—1(c), par. 33A—3(b).) That contention is rebutted by the fact that manufacture or delivery of a Schedule I or II controlled substance in certain amounts, not a violent offense, is a Class 2 felony. (Ill. Rev. Stat. 1979, ch. 56½, par.

1401(b).) It follows that a Class 2 felony is not necessarily an offense involving serious injury, as was caused by defendant's actions in the instant case.

Defendant contends that the trial court's reliance on the above mentioned aggravating factor was erroneous for a second reason: That the infliction or attempted infliction of bodily injury is inherent in the offense of armed violence based on aggravated battery. "Aggravation" is a circumstance which increases guilt or enormity or adds to the injurious consequences of the offense, "but which is above and beyond the essential constituents" of the offense itself. (Black's Law Dictionary 60 (5th ed. 1979); see *People v. Starnes* (5th Dist. 1980), 88 Ill. App. 3d 1141, 411 N.E.2d 125.) One can commit armed violence without inflicting serious bodily harm, *e.g.*, armed violence based on burglary. Yet the sentencing range for armed violence adopted by our legislature applies, not just to armed violence based on aggravated battery, but to any conviction for armed violence, regardless of the underlying felony. Thus where serious bodily harm has been caused, as in the case at bar, it is appropriate to recognize that harm as an aggravating factor in imposing sentence for the offense of armed violence.

■■ In conclusion, we find no error in the trial court's viewing the harm caused to Tom Bowles as an aggravating factor in sentencing. We decline to remand this cause for a new sentencing hearing. However, the parties concur that the mittimus issued in this cause was defective and that the cause must be remanded for correction of the mittimus. The instant mittimus states that defendant's sentence for the instant offense is "fourteen years to run consecutive to any sentence defendant is now serving." Such a sentence is too broad and indefinite. The judgment order should specify the sentence to which the instant sentence is consecutive. (*People v. Logan* (1974), 23 Ill. App. 3d 41, 318 N.E.2d 94.) This case is remanded for the sole purpose of correction of the mittimus.

Affirmed in part; reversed in part; remanded with directions.

KARNS and HARRISON, JJ., concur.[1]

---

[1] Hon. Moses W. Harrison II replaces Hon. Dorothy W. Spomer, who retired after oral argument.