THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
WILLIE J. HARPER, Defendant-Appellant.

First District (1st Division)    No. 79-1527

Opinion filed March 16, 1981.—Rehearing denied April 20, 1981.

Ralph Ruebner and Fe Fernandez, both of State Appellate Defender's Office, of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago (Marcia B. Orr, Richard F. Burke, and Barry A. Gross, Assistant State's Attorneys, of counsel), for the People.

Mr. PRESIDING JUSTICE GOLDBERG delivered the opinion of the court:

William J. Harper (defendant) was charged with armed robbery and

armed violence. A jury found him guilty of both offenses. He was sentenced to 7 years. He appeals.

No point is raised regarding the sufficiency of the evidence to prove guilt of these offenses beyond a reasonable doubt. The evidence is overwhelming to demonstrate that defendant while armed held up two men in an automobile muffler shop. Defendant acted with an accomplice named Michael Barner (not involved in this appeal). After the crime the hands of the two men from the shop were tied and the offenders left. Within a few moments the police were alerted. Another police officer, off duty, also appeared at the scene to have his car serviced. He arrived in time to witness the holdup. The police chased the two suspects. After a short pursuit the accomplice was arrested. Defendant was arrested shortly thereafter. In addition, defendant signed a full written confession.

## I.

Defendant made a pretrial motion to suppress his confession. He asserted a violation of *Miranda* rights. After a pretrial hearing, defendant's motion was denied. The record shows defendant was 21 years old and a high school graduate. Defendant had registered to attend college. He was familiar with *Miranda* warnings as he had received them in a previous unrelated arrest. Officers Casler and Maeyama both testified that Officer Maeyama gave defendant complete *Miranda* warnings shortly after arrest while driving to the police station. This process was repeated at the station. Officer Maeyama testified defendant stated he was "willing to answer questions without first speaking to a lawyer." The officers testified defendant repeated he understood each of his rights as stated to him. Defendant did not deny his understanding of these rights. The typewritten statement initialed and signed by defendant particularizes his right to a free attorney if he so desired.

Defendant testified:

"Q. Did you request a phone call?

A. Yes; I did."

Defendant also testified:

"Q. Did you request anything at all [in the police station]?

A. Nothing but a phone call."

Officer Casler testified the defendant did not ask for anything other than a drink of water. Officer Maeyama testified there were two phones in the room but defendant did not use them. Officer Casler also stated he heard Officer Maeyama tell defendant if he wished to contact an attorney he was welcome to do so.

Officer Maeyama testified on cross-examination defendant did not ask to go to his car to retrieve his wallet. Defendant testified concerning his conversation with Officer Maeyama:

"I wanted to call a lawyer by the name of Stan Pisani, but I didn't know the number by heart. The wallet was in the car and the card in my car."

Defendant testified his wallet in his car also contained the card of another attorney. Defendant also testified he told the officer he had a lawyer and "my wallet with my personal belongings was in my car and I asked him if possibly he could get it for me and told him I had a lawyer's card in it and he told me it wouldn't be necessary." Defendant added the officer told him the car had been towed away.

In *People v. Krueger* (1980), 82 Ill. 2d 305, 311, 412 N.E.2d 537, the defendant made a remark to the officers described as "Maybe I ought to have an attorney" or "Maybe I need a lawyer." The court stated (82 Ill. 2d 305, 311):

"*Miranda's* 'in any manner' language directs that an assertion of the right to counsel need not be explicit, unequivocal, or made with unmistakable clarity. We do not believe, however, that the Supreme Court intended by this language that every reference to an attorney, no matter how vague, indecisive or ambiguous, should constitute an invocation of the right to counsel. The record establishes that defendant is a person of normal intelligence, that he fully understood his *Miranda* rights, and that he effectively waived his rights before questioning and agreed to talk with the officers. The interrogation lasted for only a short while. There is no indication that defendant was under any coercion or duress other than that inherent in every custodial setting."

In our opinion, the instant case is governed by the test in *Krueger*. The defendant here never stated he did not wish to make a statement without conferring with counsel, he did not wish the interrogation to stop, or he would not make a statement without counsel. On the contrary, in quite an equivocal manner, defendant told the officer that he had a card in his wallet in his car and possibly the officer could get it, but the matter of the card went no further. Defendant then proceeded to sign a full written confession of the crime. In this court, there is no claim by defendant of coercion before the confession was signed. The typewritten statement reflects that defendant was fully aware of his right to counsel and his right to stop the interrogation at any time he wished legal services. Defendant never availed himself of these clearly stated rights.

The facts completely differentiate the authorities relied upon by defendant. In *People v. Washington* (1977), 68 Ill. 2d 186, 189, 369 N.E.2d 57, *cert. denied* (1978), 435 U.S. 981, 56 L. Ed. 2d 72, 98 S. Ct. 1631, the defendant clearly and unequivocally told the police he wanted a public defender. The police gave defendant an opportunity to reach the public defender by telephone but he was unsuccessful. (68 Ill. 2d 186, 189.) The

interrogation then continued. In *People v. Rafac* (1977), 51 Ill. App. 3d 1, 4, 364 N.E.2d 991, the defendant himself "raised the question as to how he could be represented by counsel." The officer informed defendant he could possibly have the public defender represent him in court on the following Monday. 51 Ill. App. 3d 1, 4.

In this type of situation the cases in Illinois are fixed and definite to the effect that (*People v. Aldridge* (1980), 79 Ill. 2d 87, 93, 402 N.E.2d 176):

> "* * * this court has repeatedly emphasized that a determination regarding the voluntariness of a confession by a trial judge who has seen and heard the witnesses will not be disturbed on review unless found to be contrary to the manifest weight of the evidence."

■■ The situation in the case before us does not involve a waiver of a previously invoked right to counsel. The issue rather is factual as to whether defendant actually invoked his *Miranda* right to the presence of counsel. In our opinion, the able and patient trial judge reached the correct result. His findings are not contrary to the manifest weight of the evidence. The motion to suppress was properly denied.

## II.

Counsel for defendant made a motion *in limine* to prevent the State from introducing evidence concerning the arrest of codefendant Michael Barner. This motion was upon the theory that evidence regarding Barner's arrest would deny defendant his right of confrontation because the jury might infer that Barner had implicated the defendant. The trial court denied the motion.

Officer Maeyama testified he transported Michael Barner to a bond hearing. The officer stated he conferred at the hearing with assistant State's Attorney Hawkins "where approval was obtained for—." Counsel for defendant objected. The State's Attorney then cautioned the witness just to say what he did in court. The witness stated, "obtained an arrest warrant * * * for Willie Harper [defendant]."

■■ We find no error in this regard. We see no irregularity in permitting the police officer to testify he had a conference with the assistant State's Attorney and he obtained an arrest warrant in court. The courts of Illinois have consistently held that a statement by the police officer as to his out-of-court activities is not hearsay. (See *People v. Byrd* (1976), 43 Ill. App. 3d 735, 743, 357 N.E.2d 174, *appeal denied* (1977), 65 Ill. 2d 582.) In fact, in the same type of situation it has been held that the testimony of the officer "concerning his investigatory procedures was necessary and properly admitted under the circumstances." (*People v. Williams* (1977), 52 Ill. App. 3d 81, 87-88, 367 N.E.2d 167, and cases there cited.) In another parallel situation, this court has referred to this type of testimony by a

police officer as "a necessary adjunct to the State's case in explaining why defendant was arrested." *People v. Stacker* (1979), 77 Ill. App. 3d 302, 310, 395 N.E.2d 997.

Another contention of defendant here is closely related. It is directed at the same conversation and attempts to raise the point that this evidence improperly showed the jury the State's Attorney was consulted prior to filing charges against the accused. The authorities above cited show that this type of testimony was not error but was proper and did not constitute hearsay or a violation of defendant's rights of confrontation. On the contrary, it would be strange if a police officer did not consult with the State's Attorney. It is common knowledge to every person, including jurors, that the State's Attorney institutes prosecutions, authorizes the filing of charges, and presents the State's case to the court and jury. We find no error in this regard.

### III.

Defendant criticizes the State's Attorney for statements in final argument in which the jury compared the statements by defense counsel at trial to "a series of puffs of smoke." In addition, defendant complains the prosecutor argued to the jury that defense counsel wanted them to believe there was a conspiracy to convict the defendant. In our opinion, both of these points are waived. No objection was made to either of these remarks during trial. It has consistently been held that failure to object to final argument is deemed a waiver by the defendant. (*People v. King* (1977), 66 Ill. 2d 551, 559, 363 N.E.2d 838, *cert. denied* (1977), 434 U.S. 894, 54 L. Ed. 2d 181, 98 S. Ct. 273.) In addition, the first point regarding the "puffs of smoke" is also waived because the matter was not raised in the written motion for new trial filed by defendant. *People v. Edwards* (1978), 74 Ill. 2d 1, 4, 383 N.E.2d 944, *cert. denied* (1979), 442 U.S. 929, 61 L. Ed. 2d 299, 99 S. Ct. 2862; *People v. Precup* (1978), 73 Ill. 2d 7, 16, 382 N.E.2d 227.

Regarding the argument concerning the existence of a conspiracy, we note also that this thought was first brought into the case by defendant's counsel. He told the jury that in the police station the defendant became a subject to be interrogated; defendant was "game to stalk * * *"; the police cornered the defendant; and "yet they say there is no threat when there is a statement made." In our opinion, the prosecutor had the right to respond to this type of argument as he did. (See *People v. Vriner* (1978), 74 Ill. 2d 329, 344, 385 N.E.2d 671, *cert. denied* (1979), 442 U.S. 929, 61 L. Ed. 2d 296, 99 S. Ct. 2858.) This argument by defendant's counsel actually invited retaliation by the State's Attorney.

■■ We will add that the overwhelming nature of the evidence of guilt in

the instant case convinces us beyond reasonable doubt that these arguments did not "result in substantial prejudice to the accused." (*People v. Baptist* (1979), 76 Ill. 2d 19, 29, 389 N.E.2d 1200.) This contention cannot rise to the level of plain error. We are not convinced that the verdict of the jury would have been different if these arguments had not been made. These comments by the prosecutor were not " 'a material factor in the conviction ° ° °.' " *People v. Ross* (1978), 60 Ill. App. 3d 857, 865, 377 N.E.2d 230, quoting from *People v. Clark* (1972), 52 Ill. 2d 374, 390, 288 N.E.2d 363.

## IV.

Defendant urges error in that the trial court read Illinois Pattern Jury Instructions, Criminal, No. 1.02 (1968) (IPI), to the jury including optional language appearing in parenthesis which states:

"You should judge the testimony of a (the) defendant(s) in the same manner as you judge the testimony of any other witness."

This provisional paragraph, as IPI Criminal No. 1.02 states, "should be given only when a defendant testifies." The defendant did not testify in the instant case. The report of proceedings reflects this entire instruction as given including the provisional language. The common law record before us includes an instruction in the form of IPI Criminal No. 1.02 without the last few lines above quoted. This instruction is marked "given."

We conclude the trial judge did not actually read these last few lines to the jury. Their addition in the report of proceedings would appear to be a court reporter's error. The report of proceedings also shows that during the conference on instructions the State's Attorney expressly noted he was tendering to the trial judge a form of Instruction No. 1.02. The State's Attorney noted the instruction as thus tendered "deletes the second paragraph which talks about the testimony of the defendant." Able counsel for defendant properly responded, "I have no objection," and the trial court remarked, "given."

Furthermore, even if the last few lines of the instruction had mistakenly been read to the jury, the trial court cured the situation by giving IPI Criminal No. 2.04 which specifically told the jury defendant's failure to testify should not be considered by them; IPI Criminal No. 2.01 which told the jury the offenses to which defendant had pleaded not guilty; IPI Criminal No. 2.02 advising that the information created no inference of guilt; and also IPI Criminal No. 2.03 regarding presumption of innocence and the People's burden of proof.

Additionally, the authorities above cited show this point, if it is a point, was waived because the record shows no objection made by

defendant at the time of trial and the point was not preserved in the defendant's written motion for new trial. Accordingly, this point, if it has any validity, has been waived.

## V.

■■ Defendant finally urges his conviction for armed violence should be vacated because it arose from the same act or conduct as the conviction for armed robbery. We find merit in this point, and the conviction for armed violence is accordingly vacated. See *People v. Crawford* (1980), 90 Ill. App. 3d 888, 414 N.E.2d 25; *People v. Jones* (1980), 89 Ill. App. 3d 1030, 412 N.E.2d 683. Compare *People v. Vriner* (1978), 74 Ill. 2d 329, 347, 385 N.E.2d 671, *cert. denied* (1979), 442 U.S. 929, 61 L. Ed. 2d 296, 99 S. Ct. 2858.

For these reasons the judgment and sentence for armed robbery are affirmed and the judgment and sentence for armed violence are vacated.

Affirmed in part; vacated in part.

McGLOON and O'CONNOR, JJ., concur.