THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* JOHN-NIE BAILEY, Defendant-Appellant.—THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* VERDIE BAILEY, Defendant-Appellant.

Second District   Nos. 80—642, 80—643 cons.

Opinion filed August 4, 1982.

Mary Robinson and Marilyn Martin, both of State Appellate Defender's Office, of Elgin, for appellants.

Daniel D. Doyle, State's Attorney, of Rockford (Phyllis J. Perko and Marshall Stevens, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

JUSTICE HOPF delivered the opinion of the court:

Defendants, Johnnie Bailey and Verdie Bailey, appeal from convictions of aggravated battery following a jury trial. Verdie Bailey was convicted of two counts of aggravated battery. Johnnie Bailey was convicted of one count of aggravated battery and one misdemeanor count for obstructing a police officer. On appeal they contend that the State failed to prove beyond a reasonable doubt that Verdie was guilty of committing batteries upon Rockford police officers Phillip Rote and Frederick Franck without legal justification; that the failure to instruct the jury regarding the law of self-defense and defense of another deprived both defendants of a fair trial; and that improper comments by the prosecutor during *voir dire* and closing argument denied defendants a fair trial.

This matter began on November 10, 1979, when Mrs. Verdie Bailey called the Rockford police regarding a family dispute between her son Fritz and his wife. Officer Frederick Franck testified that he was working alone when he received a call at around noon to go to 24 Preston Street. Upon arrival, he saw Fritz Bailey standing on the street about one block to the west of Preston. Fritz Bailey was not wearing a shirt, despite the cold weather, was jumping up and down and appeared very agitated or frustrated. Fritz told the officer that there was a problem on Pierpont Street a block away and the two proceeded in that direction. When they reached the corner of Preston and Pierpont they were joined by Officer Phillip Rote. Fritz pointed to a house across the street, said his wife was there, and that he wanted to talk to her. Officer Franck told Fritz to stay on the corner with Officer Rote while he went across the street to see what was going on. At that point, Franck did not see anyone else in the area or

inside the house. Fritz was still acting in a very agitated manner. Franck testified that he told Fritz three times to stay at the corner and that each time Fritz tried to follow him. Franck then told Fritz he would arrest him for disorderly conduct if he followed him again. Franck again crossed the street; Fritz followed and Rote handcuffed him after telling him he was under arrest. Franck returned to assist Rote. Fritz cooperated and returned to the squad car but refused to get in. The officers each took one of Fritz' arms and tried to push him into the car. They testified that they used no weapons.

Suddenly, Fritz' sisters, Rosie Bailey and defendant Johnnie Bailey, arrived. Franck testified that he received a "poke" or "punch" on the back of his head. When he turned around Rosie Bailey punched him between the eyes, breaking his glasses. Rote heard both girls exclaiming they did not want their brother to go to jail. He testified that Johnnie punched him, breaking his nonprescription sunglasses. Franck testified that he grabbed Rosie and tried to subdue her and they continued to scuffle. He finally sat on top of her on the ground. Rote testified that he grabbed Johnnie Bailey's right hand and restrained her. He testified that he did not remember striking her. Rote testified that before Franck subdued Rosie by sitting on her, she broke away from Franck and hit Rote on the head with a three-foot piece of lathing or a "stick." Rote took the stick from her and put it in the car. Franck identified the stick at trial.

During the struggle the Baileys' mother, defendant Verdie Bailey, joined the group. Franck testified that she grabbed his hair and hit him with her fists. Rote testified that he did not hear Verdie ask him not to hit Rosie, but that she was screaming that she did not want her daughters to go to jail. She clawed Rote and Franck with her fingernails, and Rote took Verdie in the the crook of his left arm and hit her in the temple with his fist. He testified that after he hit Verdie she went back to Officer Franck. Rote testified that Verdie went into a faint when assisting officers arrived. The fight ended when Officer Rote pulled his gun. The officers testified that after the fight they did not see any injuries on either defendant. Officer Rote also testified he saw no injuries on Rosie or Fritz.

Meanwhile a crowd had gathered. Two neighbors testified for defendants at trial. Deborah Williams, 18, testified that she saw the larger of the two officers (Officer Rote) hit Fritz Bailey with a nightstick trying to put him into the squad car. Rosie ran over to the officer and hollered something. The police grabbed her and Johnnie and began to beat them. Johnnie pulled the big officer off her younger sister. Williams testified that Officer Rote beat and kicked Rosie about

ten times. When Verdie came up, all of a sudden an officer had her on the ground. After the fight ended the witness saw that Verdie was bleeding around the eye and maybe her nose. One of the officers was bleeding on the side of the face. The witness did not see Johnnie at the end of the fight. On cross-examination she testified that she did not see how the fight started or who struck the first blow.

Mary Williams, 17, testified that an officer beat Fritz Bailey with a blackjack or stick shaped like a bat. Rosie Bailey ran up to the officers. The witness did not know whether Rosie hit an officer when she ran up to them. One officer grabbed her and started beating her on the face, throwing her down, kicking her and pulling her hair. On cross-examination the witness testified that one officer held Rosie's arms while the other officer administered the beating. Rosie was hitting back. When Verdie tried to pull Rosie away, she said, "Rosie, stop, you will get hurt." Rosie said, "I haven't did nothing to him, he did it to me." One officer grabbed Verdie and held her while the other officer beat her. Rosie was on the ground with her shirt opened, hollering. The witness admitted on cross-examination that she did not see the beginning of the fight. She did not see Johnnie Bailey in the fight.

Rosie Bailey, 14, testified that her brother and his wife had a misunderstanding and their mother went to their grandmother's house to phone the police. Rosie saw Fritz outside without a coat and went out with Johnnie to take him one. She testified that after Officer Rote handcuffed Fritz, he was "poking" him. When she asked Rote why he was poking her brother, Rote grabbed her and started twisting her arm. She testified that she then picked up a stick and they began to "battle their way." Officer Franck popped her in the left side of the face and tore her shirt off. After she and Officer Rote had a tussle on the ground Verdie Bailey ran up and asked Rosie to stop. She saw Rote put Johnnie against the wall and hit her in the chest with his fists. Finally, Officer Franck sat on top of her until Rote drew his gun. Then she was handcuffed and put in the car. Rosie saw Verdie get popped in the face by Rote.

Defendant Johnnie Bailey, 17, testified that she and her sister saw the officer hitting and pushing her brother trying to put him into a squad car. They were not hitting Fritz with a nightstick. Rosie was angry with the officers. Rote called Rosie a "bitch" and when Rosie objected to the epithet, one of the officers grabbed Rosie and punched her in the face. After the scuffle started Johnnie began to walk away; Rote then grabbed Johnnie by the arm and she got scratched. She scratched Rote on the nose. She offered no other resistance. Verdie

came up and said, "Johnnie, stop, before you get hurt." Johnnie said, "I'm not doing anything." Then Johnnie was handcuffed and placed in the squad car. Johnnie saw Verdie run over to Rosie and tell her to stop. Next she saw Verdie "laying out." She saw the officers drag Verdie to a car. Johnnie testified she was not hit by anyone and that all she did was scratch an officer when he held her arm. She did not see Rosie strike an officer.

Verdie Bailey testified that on November 10, 1979, her son Fritz and his wife had a misunderstanding and Fritz was acting strange, as though he were intoxicated or on drugs. She went to her mother's house and called the police. At one point Verdie saw officers handcuffing Fritz. Later Verdie looked out the window and saw two officers hitting her daughters "upside of the head." Verdie ran out and said, "Johnnie, stop, you will get hurt, you will get in trouble." Johnnie said, "I haven't got him, he got me." Franck was hitting Johnnie about her head and shoulders. Verdie saw Rosie and Rote scuffling. The officer hit Rosie in the head. Verdie saw him hit Rosie twice. Verdie asked him to stop. Verdie did not see Rosie strike Rote or Franck. Verdie testified that Franck grabbed her right arm and twisted it. Rote grabbed her left arm and kicked her on the inner thigh. Rote then knocked her out. Verdie testified she did not touch either officer during the fight. After the fight she was flung into a squad car and taken to the station. Over defense counsel's objection, Verdie testified that she was in another fight that same day at the police station. She testified that she was manhandled but that "there wasn't any licks passed." Verdie Bailey identified defendant's exhibits one through four as photographs taken of her two days after the fight with Franck and Rote and the incident at the police station depicting the condition of her face and of her inner thigh.

Rochelle Dent testified for the defense that as she was driving on November 10, 1979, she saw a large crowd on the corner of Pierpont and Preston. When she approached, she saw two policemen over six feet tall, weighing over 200 pounds, beating a woman and what appeared to be a 10-year-old girl with clubs. When Dent attempted to intervene, she was arrested and taken to the police station with the Baileys. Dent testified that at the police station Verdie Bailey had "dried blood streaming down her forehead."

Johnnie Bailey was found not guilty of aggravated battery as to Franck, but guilty of aggravated battery as to Rote and guilty of obstructing Franck. Verdie Bailey was found guilty of aggravated battery upon both Franck and Rote. The defendants were each sentenced to one year's probation with restitution to the officers for broken

glasses and damaged clothing.

The jury had not been instructed on the issue of self-defense or defense of others; both Verdie and Johnnie Bailey cite the failure to do so as error on appeal. Verdie also argues that the State failed to prove that she committed battery on the officers without legal justification.

The State argues that neither Verdie nor Johnnie tendered an instruction on self-defense nor preserved the issue in their motions for a new trial and thus they may not raise this issue on appeal.

As a general rule, the failure to object at trial to an asserted error in jury instructions waives the issue on appeal. *People v. Tannenbaum* (1980), 82 Ill. 2d 177, 415 N.E.2d 1027.

It has been held that when the issue of self-defense has been raised the failure to tender the instruction does not waive the issue for appeal (*People v. Pernell* (1979), 72 Ill. App. 3d 664, 391 N.E.2d 85) unless the instructions which were given sufficiently apprise the jury of the State's burden of proof. *People v. Tiller* (1978), 61 Ill. App. 3d 785, 378 N.E.2d 282.

In the instant case none of the instructions given apprised the jury that the State had a burden of proving that defendants' actions were not justified. We do not agree that the failure to so instruct the jury was plain error, however, for we conclude that the evidence with regard to the conduct of both Verdie and Johnnie did not warrant any such instructions.

With respect to Verdie Bailey's arguments we will discuss together the contentions that it was error not to instruct the jury regarding self-defense and that the State failed to prove beyond a reasonable doubt that she did not use justifiable force in defense of her daughters.

In Illinois, an individual may not use force to resist an arrest which he or she knows is being made by a peace officer, even if he or she believes that the arrest is unlawful and it is in fact unlawful. (Ill. Rev. Stat. 1979, ch. 38, par. 7—7.) This rule is qualified, however, in that it does not apply to a situation in which an officer uses excessive force. The use of excessive force invokes the right of self-defense. (Ill. Rev. Stat. 1979, ch. 38, par. 7—1.) This provision also applied to defense of another against excessive force in the effectuation of an arrest.

Self-defense or defense of another is an affirmative defense (Ill. Rev. Stat. 1979, ch. 38, par. 7—14), meaning that unless the State's evidence raises the issue involving the alleged defense, the defendant, to raise the issue, must present some evidence thereon. (Ill. Rev. Stat.

1979, ch. 38, par. 3—2.) Even a slight amount of evidence has been held to be enough to raise the issue and the accused is entitled to the benefit of any defense "even though such defense is inconsistent with his own theory." (*People v. Robinson* (1981), 92 Ill. App. 3d 972, 975, 416 N.E.2d 793.) Once the issue of self-defense is interposed by the introduction of some evidence, by either the State or the defense, the burden of proving guilt beyond a reasonable doubt as to that issue is upon the State. (*People v. Woods* (1980), 81 Ill. 2d 537, 410 N.E.2d 866.) This burden passes to the State whenever the issue of self-defense is "properly raised" by the evidence. *People v. Pernell* (1979), 72 Ill. App. 3d 664, 666, 391 N.E.2d 85.

■ It is recognized that a theory of self-defense or defense of another is properly raised even if the defendant's own testimony is inconsistent with that theory. (*People v. Bratcher* (1976), 63 Ill. 2d 534, 349 N.E.2d 31; *People v. Rodriguez* (1981), 96 Ill. App. 3d 431, 421 N.E.2d 323; *People v. Kucala* (1972), 7 Ill. App. 3d 1029, 288 N.E.2d 622.) Thus, where the State presents evidence that a defendant acted in self-defense but the defendant's testimony denied committing the act, the issue is properly raised. (*People v. Rorer* (1976), 44 Ill. App. 3d 553, 558, 358 N.E.2d 681.) Further, where defense witnesses' testimony indicated that defendant acted in self-defense, the defendant is entitled to have the jury consider the theory of self-defense even though the defendant himself denies taking any action. (*People v. Rodriguez.*) A defendant, however, cannot construct a theory of self-defense or defense of another by combining State's evidence and defense evidence. *People v. Robinson* (1981), 92 Ill. App. 3d 972, 975, 416 N.E.2d 793.

In *Robinson* the defendant, a prison inmate, was convicted of aggravated battery upon a correctional officer. The State's evidence revealed the defendant attacked the officer with a brass firehose nozzle. None of the State's evidence indicated that the defendant feared for his safety. The defendant did testify that he feared for his life; however, he denied striking the officer with the nozzle. None of defendant's occurrence witnesses claimed to have seen any physical contact between defendant and any officer. The reviewing court, although noting that only a slight amount of evidence is necessary to support the underlying theory of defense, stated nevertheless that "it cannot be said that anyone's testimony showed that defendant struck [the officer] out of fear for his own safety. The most that can be said is that the officers' testimony showed the striking, while defendant's testimony showed that he was in fear." (92 Ill. App. 3d 972, 975, 416 N.E.2d 793; see also *People v. Dukes* (1960), 19 Ill. 2d 532, 169

N.E.2d 84, *cert. denied* (1961), 365 U.S. 830, 5 L. Ed. 2d 707, 81 S. Ct. 716, holding that in absence of the State raising the issue of an affirmative defense, the defendant must present "some evidence" to raise the issue (Ill. Rev. Stat. 1979, ch. 38, par. 3—2(a)).) Defense evidence that defendant was in fear, but did not strike anyone, is not sufficient, and a defendant may not combine the State's evidence of defendant's act with defense testimony that defendant was in fear of his safety.

Verdie Bailey in the instant case is attempting to establish a theory of self-defense in the same manner as did the defendant in *Robinson*. She combines defense testimony establishing fear for her daughter's safety with State's evidence that she struck the officers in an attempt to raise the issue of defense of another.

■■■ The State presented evidence that Verdie struck both police officers. The only State's evidence that would reveal Verdie's state of mind, however, was that she screamed she did not want her daughters to go to jail. This is not indicative of a belief that the officers were using excessive force. The State thus did not raise the issue of defense of others against excessive force by the officers. For the defense Verdie and all other defense witnesses testified that the officers were beating her daughters; Verdie indicated that she was afraid her daughters would get hurt. Verdie denied, however, that she struck either officer. No defense witness testified to seeing Verdie strike a police officer. Such an attempt to construct an issue of self-defense was rejected by the court in *Robinson* and it is rejected by us here. Therefore, as the issue of defense of others was not properly raised, Verdie Bailey was not entitled to a jury instruction on the issue. Further, as the issue was not raised, it was not an element upon which the State had the burden to prove Verdie Bailey guilty beyond a reasonable doubt.

We now turn to defendant Johnnie Bailey's contention that she was entitled to a jury instruction on self-defense.

Johnnie was convicted of aggravated battery upon Officer Rote.

As we have said, in the absence of the State raising the issue, a defendant must present some evidence that his use of force is justified. A person " 'must actually believe that the danger [of harm] exists [and] that his use of force is necessary to avert the danger ***.' " *People v. Bratcher* (1976), 63 Ill. 2d 534, 540, 349 N.E.2d 31, quoting the Committee Comments to Ill. Ann. Stat., ch. 38, par. 7—1, at 364 (Smith-Hurd 1972).

The State's evidence, provided by the two officers, is that Johnnie and her sister started the battle and the officers simply acted in re-

sponse to their attack. The officers' testimonies do not raise the issue of self-defense.

Johnnie testified that she scratched Officer Rote once, on his nose, when she was scratched when he grabbed her arm. She testified that she did not offer any other resistance and had not been involved in the fracas until Officer Rote grabbed her arm. She did not indicate that she believed she was defending herself from excessive force. There is no evidence from any of the other defense witnesses tending to indicate that Johnnie acted in her self-defense.

■ Although " 'very slight evidence upon a given theory of a case will justify giving an instruction' [citations]," we consider the evidence presented in this case insufficient to meet the minimal level. (*People v. Bratcher* (1976), 63 Ill. 2d 534, 540, 349 N.E.2d 31.) We conclude no error was committed in not instructing the jury on the theory of self-defense.

Both defendants finally contend that comments by the prosecutor during *voir dire* and in closing argument improperly suggested her personal belief in the guilt of defendants and regarding the veracity of the witnesses.

During *voir dire* the following exchange took place:

> "MRS. HALLOCK [the prosecutor]: The burden of proof upon the State is what is called beyond a reasonable doubt and that doesn't mean beyond any doubt. Do you understand that?
>
> JUROR GAZZARDO: Uh-huh. Yes.
>
> MRS. HALLOCK: You understand that the State, myself, as a representative of the State, accepts that burden and that's why we are under-going a jury trial."

During closing argument the prosecutor made the following comments:

> "I think in the normal case, you have the State's version of the facts which of course we will argue and we think is accurate as to what happened and then you will have the defense with their version of the facts."

The prosecutor turned to an evaluation of the credibility of individual witnesses. She stated that the officers "did not appear to be defensive to me at least." The prosecutor also stated, "I don't think the officers raised any reasonable doubt about what happened in your mind, certainly not in my mind."

Turning to an evaluation of the defense witnesses, the prosecutor stated, "I don't think there is a reasonable doubt, a reasonable doubt created in your mind; certainly not in mine by what the defense witnesses had to say." The prosecutor also advised the jury that they

would be instructed that a police officer can use the force he reasonably believes to be necessary to effectuate an arrest or to defend himself from injury during an arrest. She stated that she thought the law regarding the use of force by police was reasonable and "those are things that need to be said in the law."

It has been consistently held that the failure to object to final argument is deemed a waiver by the defendant. *People v. Harper* (1981), 94 Ill. App. 3d 298, 302, 418 N.E.2d 894.

Defendant argues, however, that the remarks were of such prejudicial effect that they amounted to plain error and thus should not be considered waived. They argue in the alternative that the failure of defense counsel to object to the comments, and thus preserve the issue, amounted to ineffective assistance of counsel.

■■ Improper remarks by a prosecutor constitute reversible error if they result in substantial prejudice to the accused. (*People v. Baptist* (1979), 76 Ill. 2d 19, 29, 389 N.E.2d 1200.) Each case must be decided upon its own facts. (*People v. Baptist.*) What must be considered is whether the verdict would have been different if the arguments had not been made. *People v. Harper.*

■■ It is well recognized that the prosecutor may not express his own belief in defendant's guilt. (*People v. Monroe* (1977), 66 Ill. 2d 317, 362 N.E.2d 295.) Defendant cites a number of cases wherein reversible error was found in the expression by the prosecutors of personal belief in the defendants' guilt. (*People v. Slaughter* (1980), 84 Ill. App. 3d 88, 404 N.E.2d 1058; *People v. Adkins* (1973), 16 Ill. App. 3d 394, 306 N.E.2d 709; *People v. Hopkins* (1970), 124 Ill. App. 2d 415, 259 N.E.2d 577; *People v. Fuerback* (1966), 66 Ill. App. 2d 452, 214 N.E.2d 330.) We have reviewed these decisions, and conclude that the comments by the prosecutor here, that the State accepts the reasonable doubt burden, and that the witnesses' comments do not raise doubts in her mind, are not so inflammatory as to constitute plain error. See *People v. Harper* (1981), 94 Ill. App. 3d 298, 418 N.E.2d 894.

■■ With regard to the prosecutor's comments on the veracity of the witnesses, we agree that they were clearly improper. A prosecutor may discuss the credibility of witnesses but may not interject his personal beliefs. *People v. Martin* (1975), 29 Ill. App. 3d 825, 331 N.E.2d 311.

We agree with the State that for the most part the prosecutor's prefacing of her remarks about various witnesses' veracity was simply an unfortunate pattern of speech. The specific comments, of what the State thought was the accurate version of the incident, and of the fact that the witnesses' testimonies did not raise doubts in the prose-

cutor's mind, cannot be attributed to simply careless phrasing, however. These additional comments in the closing arguments, although improper, were not, we think, of such a nature that they amounted to plain error. We have reviewed the prosecutor's entire closing argument and find that it is a dispassionate, careful analysis of the evidence presented at trial. The prosecutor sought to convince the jury of defendant's guilt by analysis, not by inflaming them. We conclude that the prosecutor's argument did not substantially affect defendant's rights so as to require circumvention of the waiver rule. See *People v. Baynes* (1981), 88 Ill. 2d 225, 231, 430 N.E.2d 1070; *cf. People v. Slaughter* (1980), 84 Ill. App. 3d 88, 404 N.E.2d 1058.

■■ Defendants argue that counsel's failure to object to the prosecutor's improper remarks along with the failure to request instructions on justifiable use of force amounted to ineffective assistance of counsel, denying them a fair trial. As we discussed earlier, however, defendants were not entitled to instructions on justifiable use of force. Further, we are not convinced that had counsel objected to the prosecutor's remarks the outcome of the trial would probably have been different. *People v. Moore* (1981), 102 Ill. App. 3d 651, 429 N.E.2d 1312; *People v. Scott* (1981), 94 Ill. App. 3d 159, 418 N.E.2d 805.

We affirm the judgment of the Winnebago County circuit court.

Affirmed.

SEIDENFELD, P. J., and NASH, J., concur.