THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. DOROTHY VEATCH, Defendant-Appellant.

Second District    No. 2—84—1130

Opinion filed July 10, 1986.

Michael D. Fabing and John E. McNeal, both of Warsawsky, McNeal & Associates, of Chicago, for appellant.

James E. Ryan, State's Attorney, of Wheaton (Kenneth R. Boyle, of State's Attorneys Appellate Prosecutor, of Springfield, William L. Browers,

of State's Attorneys Appellate Prosecutor, of Elgin, and Barbara J. Slingerland, of Springfield, of counsel), for the People.

PRESIDING JUSTICE NASH delivered the opinion of the court:

After trial by jury defendant, Dorothy Veatch, was found guilty of resisting a police officer (Ill. Rev. Stat. 1983, ch. 38, par. 31—1) and was placed on one year of supervision and fined $100. She appeals, contending the trial court erred in refusing to instruct the jury on the defenses of necessity, use of force in defense of another and ignorance or mistake; defendant also contends the court erred in refusing admission in evidence of certain photographs offered in support of her defenses.

The evidence at trial disclosed that on April 15, 1984, at about 2 a.m., Daniel Veatch, Jr., defendant's husband, was stopped by two police officers of the village of Woodridge for failing to signal for a left-hand turn of his automobile. Veatch, Jr., testified an officer told him to place his hands on the car and spread his legs apart. He did so, but failed to spread his legs wide enough to satisfy the officers, one of whom then kicked Veatch's left foot to extend it further. Veatch stated he lost his balance and as he sought to regain it an officer forced his head against the car and pulled Veatch's left hand behind him placing a handcuff on his wrist. Veatch was told to put his right hand behind his back, but could not do so as it was pinned between his body and the car. The officers thereupon pushed him to the ground and the next thing Veatch recalled was lying handcuffed in a police car with an officer hitting his legs with a flashlight. Veatch's face was bleeding and his legs sore.

Other witnesses testified that while Veatch, Jr., was still on the ground near his car four other Woodridge police officers had arrived at the scene.

Defendant, Dorothy Veatch, testified she had been visiting at her in-laws' home in Downers Grove that night, without her husband, and defendant's father-in-law, Daniel Veatch, Sr., was driving her home. As their car approached the intersection of Woodward and Prentice Avenue, they saw flashing lights and, out of curiosity, drove to the scene. When they approached they recognized Veatch, Jr.'s, car on the side of the road and saw three police cars with emergency lights operating.

Defendant testified she thought her husband had been in an accident and she ran over to the scene. Police officers were standing next to her husband's car and he was lying motionless and handcuffed on the ground. She stated that an officer was kneeling on her husband's back and hitting him with a nightstick. One of the officers then picked

her husband up and none of them responded to her inquiry as to what they were doing. An officer told her to stand back, but she attempted to place herself between them and her husband, whose face was bloody. Defendant testified that she pushed or grabbed an officer in an effort to protect her husband and stop them from hitting him. She stated two officers then pulled her away and put her in a car; they hit her and held her arms tightly. Defendant denied kicking at the officers or twisting and turning while they attempted to handcuff her. She stated that she was never told at the scene that her husband was under arrest or that she was being arrested.

Daniel Veatch, Sr., testified he saw his son's car on the side of the road and his son lying on the ground. Two officers had him pinned face down and one with his knee on his son's back was striking him in the head with a nightstick. Defendant, who was crying, ran over and told the officers they were hurting her husband and to leave him alone. The witness did not see defendant struggle with the officers.

Officer Larry Bice testified that when he arrived at the scene he observed two officers in the process of handcuffing defendant's husband. He was assisting the other officers in putting the subject in the squad car when the defendant grabbed him from behind and attempted to pull him away, saying, "Leave my husband alone. Get away from him. He didn't do anything." Defendant was removed by Officers Schnibben and Pugsley, Schnibben advising her she was under arrest for obstructing a peace officer. Officer Bice stated that he did not strike defendant's husband or see anyone else do so. He did not recall whether defendant's husband appeared bruised or bleeding at the scene; the first time he noticed any injuries was at the station.

Officer Steven Pugsley testified that he was handcuffing defendant's husband when defendant approached yelling, "What are you doing to my husband? Let him alone. He wasn't doing anything." Officer Pugsley asked defendant to step back, but she "jumped" on Officer Bice. As Sergeant Carl Schnibben tried to pull defendant away, Officer Pugsley heard him inform defendant that she was under arrest. Defendant began kicking, screaming, swinging her elbows, pulling away from the officers and demanding an attorney. Officer Pugsley did not see anyone strike defendant's husband, but noticed the husband's injuries at the police station and transported him to a hospital where he was treated.

Sergeant Carl Schnibben testified that he saw defendant "bear hug" Officer Bice in an apparent attempt to pin his arms to his side and pry him away from her husband. He heard her ask what they were doing to her husband. He grabbed defendant by the arm and advised

her she was under arrest for obstructing a police officer. Defendant pushed and shoved Sergeant Schnibben and Officer Pugsley as they took her from the area where her husband was to the squad car and she continued to struggle while the officers handcuffed her and placed her in the squad car. Although Sergeant Schnibben did not notice any of defendant's husband's injuries at the scene, he saw them later at the station.

Detective Sergeant Richard Zawodniak testified he assisted the other officers in placing defendant's husband in the squad car at the scene. He admitted striking defendant's husband twice across the shins with a flashlight in the car to keep him from kicking one of the officers. He noticed that the husband's face was bloody and could hear defendant screaming from inside another squad car, asking what the officers were doing and where they were taking her husband.

Officer Kevin Lindblom testified that he was at the scene but did not see any police officers strike defendant's husband. He called an ambulance from the scene when he noticed the husband's face was bleeding, requesting they be met at the police station. The jail refused to accept Daniel Veatch, Jr., as a prisoner after the jail medic examined him and he was taken to a hospital where he was treated for cuts, abrasions and bruises and received stitches.

During trial, defendant sought to introduce photographs showing her husband's injuries, including a "mug shot" taken at the police station shortly after the incident. The trial court denied admission of the mug shot as too gruesome and prejudicial and also denied admission of other photographic exhibits as prejudicial and cumulative. The court allowed in evidence two photographs of the husband taken at a later date.

At the close of the evidence, defendant tendered instructions defining the affirmative defenses of ignorance or mistake of fact, use of force in defense of another and necessity. The trial court refused to instruct the jury as to the defense of ignorance or mistake, but allowed the defenses of use of force in defending another and necessity limited to the charge of obstructing an officer. The court refused these instructions as to the charges of resisting arrest.

During its deliberation the jury sent a note to the judge inquiring whether the instructions containing the defenses of use of force in defense of another and necessity, which were given relating to the obstruction charge, also applied to the resisting charges. The court advised they did not so apply. The jury returned verdicts finding defendant guilty of resisting Officers Schnibben and Pugsley and finding her not guilty of obstructing Officer Bice.

We consider first whether the trial court erred in refusing defendant's instructions defining the defenses of use of force in defense of another and necessity for consideration by the jury of the offenses of resisting an officer for which she was convicted.

The offenses of resisting or obstructing a peace officer are both established by section 31—1 of the Criminal Code of 1961 which provides:

> "A person who knowingly resists or obstructs the performance by one known to the person to be a peace officer of any authorized act within his official capacity commits a Class A misdemeanor." Ill. Rev. Stat. 1983, ch. 38, par. 31—1.

By criminal complaints executed by the officers after the incident in question, defendant was charged, and tried, for the offense of obstructing Officer Larry Bice by grabbing him and attempting to pull him away from Daniel Veatch, Jr. She was charged also, in separate complaints, with resisting Sergeant Schnibben and Officer Pugsley by pushing, shoving and attempting to break away.

The instructions which the trial court refused to give relative to the charges of resisting an officer were premised upon the affirmative defenses of necessity, use of force to defend another, and ignorance or mistake (Ill. Rev. Stat. 1983, ch. 38, pars. 7—13, 7—1, 4—8), which presuppose that the accused committed the act charged when offered as a defense justifying his conduct. (*People v. Diaz* (1981), 101 Ill. App. 3d 903, 914-15, 428 N.E.2d 953, *appeal denied* (1982), 91 Ill. 2d 554; *People v. Terry* (1976), 38 Ill. App. 3d 795, 796, 349 N.E.2d 129.) In refusing to instruct the jury on the affirmative defenses of necessity and use of force to defend another as to the resisting charges, the trial court reasoned that the defendant's acts of resisting the officers who took her into custody were separate and distinct from her acts of obstructing Officer Bice, who she had sought to pull away from her husband, and were without justification. The court determined that the defense of ignorance or mistake did not apply to either offense in these circumstances.

■■■ It has been determined that a defendant is entitled to the benefit of any defense shown by the entire evidence, even if the facts on which the defense is based are inconsistent with defendant's own testimony. Very slight evidence upon a given theory of a case will justify the giving of an instruction. (*People v. Bratcher* (1976), 63 Ill. 2d 534, 540, 349 N.E.2d 31; *People v. Bailey* (1982), 108 Ill. App. 3d 392, 399, 439 N.E.2d 4, *appeal denied* (1982), 92 Ill. 2d 568.) An affirmative defense may be raised by the State's evidence and, if that does not do so, the defendant must present some evidence thereon to raise the is-

sue. Ill. Rev. Stat. 1983, ch. 38, par. 3—2(a).

Defendant contends she was entitled to the instructions relating to the justifiable use of force in the defense of another as to both charges as she sought by her conduct only to protect her husband from excessive force by the officers and reasonably believed it was necessary for her to do so at that time. (See *People v. Bailey* (1982), 108 Ill. App. 3d 392, 398, 439 N.E.2d 4, *appeal denied* (1982), 92 Ill. 2d 568.) The State responds, however, that defendant denied in her testimony any act of resistance to Officers Schnibben or Pugsley and thus may not invoke the defense of use of force to protect another, citing *People v. Bailey* (1982), 108 Ill. App. 3d 392, 399, 439 N.E.2d 4, *appeal denied* (1982), 92 Ill. 2d 568, and *People v. Robinson* (1981), 92 Ill. App. 3d 972, 416 N.E.2d 793.

■ The State's argument would be correct if defendant had, in fact, denied the acts of resistance to the officers for which she was charged; however, she did not do so. Defendant testified that she had physical contact with the officers and placed herself between them and her husband after she saw his bleeding face. She stated that she pushed an officer while her husband was being beaten telling them to leave him alone as they were hurting him. The witnesses estimated defendant's participation in the incident lasted between 30 and 90 seconds, after which the husband was in one squad car and defendant in another still attempting to reach him. It is true, as noted by the State, that defendant denied hitting or kicking the officers, as they testified, but she was charged with pushing and shoving them and attempting to break away and did not deny that conduct. We conclude, in these circumstances, the jury should also have been instructed as to the defense of another as to the charges of resisting the officers.

■ For similar reasons we find that it was error to refuse defendant's instruction defining the affirmative defense of necessity. Section 7—13 of the Criminal Code of 1961 provides:

> "Conduct which would otherwise be an offense is justifiable by reasons of necessity if the accused was without blame in occasioning or developing the situation and reasonably believed such conduct was necessary to avoid a public or private injury greater than the injury which might reasonably result from his own conduct." (Ill. Rev. Stat. 1983, ch. 38, par. 7—13.)

There was sufficient evidence presented to permit the jury to consider whether defendant's conduct in struggling with the officers was justified by a reasonable belief on her part that it was necessary to protect her husband from excessive use of force by the officers. Under the evidence, the question whether defendant's belief was reasonable and the

force she used necessary is for the jury to resolve under proper instructions from the trial court.

■ We agree, however, that the trial court correctly refused to instruct the jury as to the affirmative defense of ignorance or mistake. Section 4—8 of the Criminal Code of 1961 provides that "[a] person's ignorance or mistake as to a matter of either fact or law *** is a defense if it negatives the existence of the mental state which the statute prescribes with respect to an element of the offense." (Ill. Rev. Stat. 1983, ch. 38, par. 4—8.) The relevant mental state with respect to the offense of resisting a peace officer is whether defendant "knowingly" resisted one known to her to be a peace officer (Ill. Rev. Stat. 1983, ch. 38, par. 31—1) and it is clear defendant did so here.

■ We consider next whether the trial court erred in excluding from evidence certain photographs of defendant's husband which depicted injuries alleged to have been sustained in the incident. Defendant contends they were relevant to the affirmative defenses she sought to raise in trial by showing the circumstances in which she acted.

The trial court admitted in evidence defendant's exhibits A—2 and B—2, which were photographs of her husband's head, shoulders and back taken about two days after the incident. It refused admission of defendant's exhibits A—1 and A—3 through A—5, which were further photographs of the husband's face and neck showing essentially the same injuries as in the photographs which were admitted. We agree these were cumulative and that the court did not abuse its discretion in excluding them. See *People v. Frazier* (1984), 129 Ill. App. 3d 704, 710, 472 N.E.2d 1183; *People v. Jones* (1983), 114 Ill. App. 3d 576, 590, 449 N.E.2d 547.

■ Defendant's exhibit C, also excluded from evidence, is a "mug shot" of defendant's husband taken in the Woodridge police department shortly after the incident. As it most accurately portrays the husband's appearance at the time of defendant's confrontation with the police officers it should have been admitted for consideration by the jury. See *People v. Foster* (1979), 76 Ill. 2d 365, 375, 392 N.E.2d 6; *People v. Speck* (1968), 41 Ill. 2d 177, 202, 242 N.E.2d 208.

Accordingly, the judgment of conviction for resisting a peace officer will be reversed for error in instructing the jury and exclusion of evidence and the cause remanded for a new trial.

Reversed and remanded.

LINDBERG and UNVERZAGT, JJ., concur.