THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. ROBERT LAMAR PAYTON, Defendant-Appellant.

First District (6th Division)   No. 1—88—0952

Opinion filed January 4, 1991.—Rehearing denied February 5, 1991.

---

*Justice Freeman participated in the decision of this case prior to taking office as a supreme court justice.

Randolph N. Stone, Public Defender, of Chicago (Kyle Wesendorf, Assistant Public Defender, of counsel), for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb, William D. Carroll, and Walter P. Hehner, Assistant State's Attorneys, of counsel), for the People.

PRESIDING JUSTICE RAKOWSKI delivered the opinion of the court:

Following the denial of defendant's motion to quash arrest and suppress evidence, a bench trial was held and he was found guilty of possession of cocaine and sentenced to 18 months' imprisonment.

On June 3, 1987, at approximately 4 a.m., Markham police officer Ralph Tolbert observed a vehicle proceeding "northbound on Winchester at a very slow rate of speed." As the vehicle approached 163rd Street, it stopped and defendant, who was the driver, exited and walked "briskly" toward a house. He approached the door but did not knock or ring the bell. Instead he walked around the back of the residence. At this point, Tolbert approached the vehicle and was informed by the passenger that defendant was going to visit someone. Because Tolbert, from previous experience, knew that the defendant did not live in the residence, he went around the back, where he observed the defendant climb over a fence and run down an alley. Tolbert then pursued the defendant on a chase which lasted 10 to 15 minutes. During the chase Tolbert periodically lost sight of the defendant and used his portable to call for back-up. At least six cars responded and sealed off the area. After finally losing the defendant, Tolbert returned to his auto, where he heard a radio dispatch that defendant had been seen "between houses on the 164th block of Wolcott".

At approximately 5 a.m. Tolbert again saw the defendant, this time running toward a house at 165th and Winchester. He then saw the defendant return to the vehicle he had seen earlier and enter the passenger door as the vehicle pulled away. Tolbert activated his overhead lights and pulled the car over. As he approached the vehicle, from a distance of approximately five feet, he observed the defendant "lean forward almost to the dash" and "stuff a plastic bag in the crack of the seat *** he had his fingers extended and he was pushing it into the crack of the seat." Tolbert ordered the defendant out of the car, frisked him, seized the plastic bag, and upon observing that it contained "fifteen small plastic folds and a smaller plastic bag containing a white powder substance" which he suspected was cocaine, placed the defendant in handcuffs. Tolbert testified that at the time of the initial seizure he did not know what

was in the plastic bag. When asked if he feared that defendant had a weapon he stated: "I had concerns but I was sure he didn't have a weapon on him."

At oral argument, the State conceded that probable cause for arrest did not exist at the time of the stop, pat-down or seizure of the plastic bag. Instead, it relies on *Terry v. Ohio* (1968), 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868, as codified in section 108—1.01 of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1987, ch. 38, par. 108—1.01). Under *Terry*, it has long been established that an officer may pat-down for weapons whenever he has reason to believe that he is encountering a person who is armed and dangerous. Defendant, also at oral argument, conceded that while Tolbert could have conducted a valid *Terry* stop and pat-down during or immediately after the chase, the intervening time (approximately 45 minutes) during which Tolbert returned to his car, heard the dispatch and again observed defendant somehow diminished the officer's basis to stop defendant. Defendant further argues that even if the stop is justified, the seizure is not because the plastic bag was not a weapon.

■ In Illinois, the circumstances under which a police officer may stop a citizen have been codified:

"A peace officer, after having identified himself as a peace officer, may stop any person in a public place for a reasonable period of time when the officer reasonably infers from the circumstances that the person is committing, is about to commit or has committed an offense as defined in Section 102—15 of this Code, and may demand the name and address of the person and an explanation of his actions. Such detention and temporary questioning will be conducted in the vicinity of where the person was stopped." (Ill. Rev. Stat. 1987, ch. 38, par. 107—14.)

(See *People v. Lang* (1978), 66 Ill. App. 3d 920, 383 N.E.2d 782.) Section 108—1.01 of the Code of Criminal Procedure provides that at such a stop, if an officer "reasonably suspects that he or another is in danger of attack, he may search the person for weapons." Ill. Rev. Stat. 1987, ch. 38, par. 108—1.01.

We do not accept defendant's argument that because 45 minutes had elapsed, Officer Tolbert no longer had sufficient grounds to conduct an investigatory stop pursuant to section 107—14 or a subsequent pat-down pursuant to section 108—1.01. To the contrary, not only do we fail to understand how the passage of 45 minutes would change anything under these circumstances, but during that

period additional factors came to the attention of Officer Tolbert which would, if anything, heighten his suspicions: Defendant was sighted between buildings in the 164 hundred block of Wolcott, and when seen by Officer Tolbert at 165th and Winchester, he was first running toward a building and then came back to the auto and entered the passenger door as the vehicle pulled away. Further, it must be kept in mind that it was 4 a.m. and Tolbert, from previous experience, knew that defendant did not live in the house he initially had approached.

■■ Clearly, the foregoing circumstances justify an investigatory stop pursuant to *Terry*. While defendant cites five cases in support of a contrary position, all are easily distinguished. In *People v. Grotti* (1983), 112 Ill. App. 3d 718, 445 N.E.2d 946, the officer's only basis for a traffic stop was that the vehicle matched the de-. scription of a vehicle seen "hot rodding through town about two weeks earlier." Further, this observation was made by someone who failed to give the officer any description of the driver. (*Grotti*, 112 Ill. App. 3d at 719.) In *People v. LaGrone* (1984), 124 Ill. App. 3d 301, 464 N.E.2d 712, an auto was stopped because it was being driven with the door to the trunk opened, the trunk containing two chairs and a TV set. (*LaGrone*, 124 Ill. App. 3d at 302.) It should also be noted that the State in *LaGrone* argued that these facts not only justified a stop but a search of the entire vehicle. In *People v. Deppert* (1980), 83 Ill. App. 3d 375, 403 N.E.2d 1279, an auto was stopped in an industrial area, which had been the subject of recent burglaries, because it was traveling slowly in a northbound direction, turned around in a private railroad yard and then came out and proceeded back in a southbound direction. (*Deppert*, 83 Ill. App. 3d at 377.) In *People v. James* (1976), 44 Ill. App. 3d 300, 358 N.E.2d 88, an "auto was parked to one side of the street so as to not impede passing traffic and the driver moved his vehicle as soon as he saw a car coming." (*James*, 44 Ill. App. 3d at 303.) The officer ordered the vehicle to stop because "he 'wanted to check the car out and find out what the occupants were doing,' at that hour of the morning." (*James*, 44 Ill. App. 3d at 302.) Finally, in *People v. Wombacher* (1982), 104 Ill. App. 3d 812, 443 N.E.2d 374, the defendants were passengers in an auto, the driver of which had stopped for soft drinks. When the arresting officer saw the driver walk back toward the car, he decided to check the auto because there had been recent vending machine thefts in the area and because people had told him that one of the occupants was "a heavy user of drugs." (*Wombacher*, 104 Ill. App. 3d at 816.) While we

agree with the holdings in these cases, they are all far removed from the facts of the instant case. Each is an example of a specific act that was not sufficient to warrant intrusion pursuant to *Terry*. However, "a series of acts, each of them perhaps innocent in itself, [when taken together may warrant further investigation]." *Terry*, 392 U.S. at 22, 20 L. Ed. 2d at 907, 88 S. Ct. at 1880-81.

■ Next defendant argues that Tolbert did not have any basis to seize the plastic bag from the seat, and once he did and discovered that it didn't contain a weapon, he should have returned it. We disagree. Initially, we note that defendant has failed to cite any authority for the above proposition. Bare contentions not supported by argument or citation to authority may be deemed waived on appeal. (*Rockford Memorial Hospital v. Schueler* (1988), 167 Ill. App. 3d 358, 361-62, 521 N.E.2d 251.) The appellate court is not a depository in which appellant may dump the burden of argument and research. (*Thrall Car Manufacturing Co. v. Lindquist* (1986), 145 Ill. App. 3d 712, 719, 495 N.E.2d 1132.) While arguments raised only at oral argument, as here, ordinarily are waived, it is the prerogative of the court to consider such points. (*Handley v. Unarco Industries, Inc.* (1984), 124 Ill. App. 3d 56, 66, 463 N.E.2d 1011.) Despite appellant's failure to properly present these arguments, we shall address them.

■ To hold that an officer, after making a valid stop and patdown, cannot seize an unidentified item that he had seconds before seen defendant stuff into a crack of the seat and which was still within reach of the other occupant of the auto and arguably within reach of the defendant himself is not at all realistic. In *Michigan v. Long* (1983), 463 U.S. 1032, 77 L. Ed. 2d 1201, 103 S. Ct. 3469, the Supreme Court extended the rationale of *Terry* to a protective search of the passenger compartment of a vehicle. It is permissive for an officer in making a *Terry* stop to search the passenger compartment of the automobile, limited to those areas where a weapon may be placed, provided that the officer has a reasonable belief, based on specific and articulable facts which, taken together along with rational inferences therefrom, warrant the belief that the suspect is dangerous and may gain immediate control of a weapon. (*People v. Froio* (1990), 198 Ill. App. 3d 116, 121, 555 N.E.2d 770.) We have examined the record and agree with the trial judge that Officer Tolbert could have reasonably believed that defendant was dangerous and that control of a weapon could have been gained. Situations such as this are the very justification of the *Terry* rule as codified in section 108—1.01 of the Criminal Code.

■ Equally without merit is the notion that once Officer Tolbert had the bag in his hand and discovered that it contained folded papers and a white powder that he suspected was cocaine, he should have returned it because it did not contain a weapon. As the seizure was valid, it would not have been proper to suppress any contraband recovered. *Long*, 463 U.S. at 1050, 77 L. Ed. 2d at 1220, 103 S. Ct. at 3481; *Froio*, 198 Ill. App. 3d at 123.

For the above reasons, the judgment of the circuit court is affirmed.

Affirmed.

EGAN and LaPORTA, JJ., concur.