THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. DANIEL CARPENTER, Defendant-Appellant.

First District (3rd Division)   No. 1—90—3120

Opinion filed May 6, 1992.

Rita A. Fry, Public Defender, of Chicago (Greg Koster, Assistant Public Defender, of counsel), for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb, Michael Latz, and Matthew L. Moodhe, Assistant State's Attorneys, of counsel), for the People.

JUSTICE CERDA delivered the opinion of the court:

After a jury trial, defendant, Daniel Carpenter, was convicted of reckless homicide (Ill. Rev. Stat. 1989, ch. 38, par. 9—3), driving under the influence of alcohol (Ill. Rev. Stat. 1989, ch. 95½, par. 11—501), and driving on a suspended driver's license (Ill. Rev. Stat. 1989, ch. 95½, par. 6—303). Defendant was sentenced to five years' imprisonment on the reckless homicide and driving under the influence of alcohol. No sentence was entered on the driving on a suspended license conviction.

On appeal, defendant asserts that (1) the laboratory report of his first blood test was inadmissible because section 11—501.4 of the Illinois Vehicle Code (Ill. Rev. Stat. 1989, ch. 95½, par. 11—501.4) unconstitutionally conflicts with Supreme Court Rule 236 (134 Ill. 2d R. 236); (2) testimony regarding his second blood test was improper because the chain of custody had been broken; and (3) his blood tests were improperly admitted as expert opinion. We affirm.

The main issue is whether blood test reports are admissible in evidence under section 11—501.4 (Ill. Rev. Stat. 1989, ch. 95½, par. 11—501.4) in a trial for reckless homicide and driving under the influence.

On May 27, 1989, an automobile accident occurred on the Stevenson Expressway at Central Avenue in Chicago, Illinois. As a result, Alexander Forsner, 3½ months old, was killed, Brian Forsner was injured, and Sheila Forsner was injured. Defendant was indicted for reckless homicide, driving under the influence of alcohol, and driving on a suspended license.

Edward Forsner testified that he was driving a rented car on the Stevenson Expressway about 6:20 p.m. on May 27, 1989. Also in the car were his wife, Sheila, their son, Brian, 16 years old, and their son, Alexander, 3½ months old. As Forsner approached Central Avenue, he noticed a car resembling his own car, which had been stolen a week earlier. He drove onto the left shoulder, walked across the median, and looked at the car. After he determined that the car was not his, he returned to his rented car.

Just as Forsner was putting his seat belt on, defendant's car hit his car from behind. Forsner did not hear brakes screeching before the collision. Immediately after being hit, Forsner's car flipped over twice and landed upright. Once the car stopped flipping, Forsner saw his wife draped forward leaning over the floor and Brian pinned between the rear and front seats with his face contorted against the window, but he did not see Alexander. Forsner got out of the car and tried to open the other doors, but could not.

Eventually, emergency equipment arrived at the scene. Sheila was pulled from the car and treated by passers-by and paramedics. Hydraulic equipment pried Brian from the car. Two helicopters transported Sheila and Brian to Loyola University Medical Center. Sheila was in a coma for five months and is a quadriplegic. Brian was in a coma for four or five days and remained in the hospital another four days. Forsner was not physically injured. Alexander, who had been sitting in a car seat in the back seat, was pronounced dead at the scene. Linda Kieta, who was a passenger in defendant's car, suffered bruises on her head and legs.

Maria Jiminez testified that she was driving 65 miles per hour on the Stevenson Expressway at 6:20 p.m. with her three children and two nephews. A gold car, identified as defendant's, was traveling about 75 miles per hour when it passed her on the right, nearly hitting her car. Jiminez turned around to quiet the children. When she looked forward again, she saw defendant's car, which had crossed into the far left lane, drive onto the left shoulder. She heard a "bang" and saw Forsner's car fly into the air after being hit by defendant's car. Jiminez stated that she did not see brake lights or hear brakes screeching prior to the impact. She said that there were no cars be-

tween her car and defendant's car when the accident occurred; defendant's car had not been cut off by another vehicle; and there was no obstruction in the road causing defendant's car to move onto the shoulder.

Illinois State Trooper Dennis Wegener testified that he arrived at the accident scene, saw both cars, and began attending to the injured. He did not see any skid marks. After about 15 minutes, Wegener approached defendant, who identified himself as the driver of the car that struck Forsner's car. Wegener observed that defendant's face was flushed, he smelled moderately of alcohol, he stuttered, he spoke with a thick tongue, and his eyes were red, glassy, and bloodshot. Wegener indicated in his police report that defendant was cooperative, but crying, at the scene. Although defendant told Wegener that he forgot his driver's license at home, a later check revealed that defendant's driver's license had been suspended. Wegener also stated that he found a clean, cold, wet, empty beer bottle near the scene.

Defendant was taken to Loyola University Medical Center, where he was later placed under arrest for driving under the influence of alcohol. Wegener testified that defendant was laughing and carefree at the hospital. Defendant told Wegener that he had drunk three to six bottles of beer earlier that afternoon. Around 10:40 p.m., Wegener asked a nurse to get urine and blood samples from defendant. Wegener watched the nurse draw two vials of defendant's blood and place the labelled vials in a styrofoam DUI kit. The nurse gave Wegener the DUI kit, which he put in his car before driving defendant to the police station. While at the police station, Wegener left the container in his car. When he arrived at home that night, Wegener put the container in his refrigerator. The next morning, Wegener checked the evidence seal on the package and shipped it to the Illinois State Police Crime Lab.

Alex Qualizza, an emergency medical technician, testified that he treated Linda Kieta at the scene. Defendant accompanied Kieta to the hospital. In the ambulance, defendant told Qualizza that he had drunk four to six beers and had smoked marijuana before the collision.

Dr. John Furiasse, the emergency room physician, treated defendant at 8:45 p.m. Dr. Furiasse testified that defendant was talking loudly, would not sit still, and smelled of alcohol. Blood and urine samples were taken at 8:50 p.m. at Dr. Furiasse's direction. The laboratory report showed that defendant's blood-alcohol content was .093, slightly below the legal limit. Defendant's urine tested positive for the presence of marijuana. On cross-examination, Dr. Furiasse testified that marijuana can stay in a person's system for up to 30 days.

Emergency room nurse Renata Sobey testified that she obtained defendant's blood and urine samples at 8:50 p.m. Another urine sample was ordered after the laboratory informed her that the first specimen was actually tap water. Defendant gave another urine sample under supervision at 10:25 p.m. Nurse Sobey took a second blood sample at 10:40 p.m., labeled the vials, and gave the DUI kit to Trooper Wegener.

Assistant State's Attorney Donald Havis testified that he interviewed defendant at the Bedford Park police station at 1:45 a.m. on May 28, 1989. Defendant told Havis that he had been at a Round Lake park and had consumed three to six beers between 1 p.m. and 5 p.m. on May 27, 1989.

Dr. Jeffrey Benson, an Illinois State Police Crime Lab forensic scientist, testified as an expert witness. He received defendant's second blood sample on June 1, 1989, at which time he placed his initials and the date on the vials. Two days later, Dr. Benson analyzed the sample and determined that its alcohol content was .043, less than half the legal limit.

Using back extrapolation calculations, Dr. Benson estimated defendant's blood-alcohol content at 6:30 p.m., immediately after the collision, at .126, which is above the legal limit. Dr. Benson noted that defendant's blood-alcohol content had dropped from .093 at 8:50 p.m. to .043 at 10:40 p.m. Based on those figures, Dr. Benson determined that defendant's body was metabolizing the alcohol and his blood-alcohol level was descending in the hours after the accident. Dr. Benson concluded that defendant was under the influence of alcohol at the time of the accident.

After deliberations, the jury convicted defendant of reckless homicide, driving under the influence of alcohol, and driving with a suspended license. The trial court then sentenced him to five years' imprisonment and ordered him to pay $3,600 restitution.

■ On appeal, defendant asserts that his first blood test was not admissible under section 11–501.4 (Ill. Rev. Stat. 1989, ch. 95½, par. 11–501.4) because that statute unconstitutionally conflicts with Supreme Court Rule 236, which prohibits the admission of medical records under the business records exception to the hearsay rule. Even if a hearsay laboratory report of a blood test is reliable for medical purposes, defendant contends, it is unreliable in a criminal trial. There is no merit to defendant's argument.

The Illinois Appellate Court has recently held that section 11–501.4 does not conflict with Supreme Court Rule 236. In *People v. Solis* (1991), 221 Ill. App. 3d 750, 752, 583 N.E.2d 26, the first district

ruled that section 11—501.4 is constitutionally valid because it permits the admission of blood-alcohol test results only under very limited circumstances, which are designed to insure that the written test results are trustworthy and reliable. Furthermore, the court noted, the admissibility allowed in section 11—501.4 is limited to prosecutions for reckless homicide and driving under the influence. *Solis*, 221 Ill. App. 3d at 752.

The fourth district in *People v. Hoke* (1991), 213 Ill. App. 3d 263, 270, 571 N.E.2d 1143, ruled that section 11—501.4 does not conflict with Supreme Court Rule 236 because section 11—501.4 imposes requirements for admissibility unrelated to a document's admissibility under the business record exception to the hearsay rule, which is all that Supreme Court Rule 236 addresses. Furthermore, the court stated that section 11—501.4 provides that written results of blood-alcohol tests conducted on persons receiving medical treatment in hospital emergency rooms are admissible as a business record exception, but only under very limited circumstances, which are enumerated in the statute. *Hoke*, 213 Ill. App. 3d at 269.

The second district held in *People v. Lendabarker* (1991), 215 Ill. App. 3d 540, 560, 575 N.E.2d 568, that there is no conflict because the admissibility allowed in section 11—501.4 applies only to criminal proceedings and Supreme Court Rule 236 is applicable only to civil proceedings.

■ Next, defendant asserts that the chain of custody of his second blood sample was deficient, making the sample inadmissible. Defendant argues that there was no testimony concerning the evidence seal that Trooper Wegener had placed over the DUI kit, including no evidence that the seal was intact when received by Dr. Benson. Defendant states that the blood-test results are inadmissible because there was no evidence that the sample had not been changed in any important respect in all reasonable probability.

Defendant waived this issue because he did not object at trial to the sufficiency of the blood sample's chain of custody. (*People v. Enoch* (1988), 122 Ill. 2d 176, 186, 522 N.E.2d 1124.) If he had objected, the trial court could have remedied any alleged deficiency by instructing the State to clarify the chain of custody.

Defendant asserts that Dr. Benson's expert testimony regarding back extrapolation calculation to estimate defendant's blood-alcohol level at the time of the collision was inadmissible because that method is not commonly accepted by the scientific community. He does not offer any further argument, other than conclusory statements in support of his contention, nor does he cite any authority for that conten-

tion. Defendant waived his argument. A point raised but not argued or supported by citation to relevant authority is waived because it fails to satisfy Supreme Court Rule 341(e)(7) (134 Ill. 2d R. 341(e)(7)). (*People v. Felella* (1989), 131 Ill. 2d 525, 540, 546 N.E.2d 492.) Even if it had not been waived, the argument has no merit. See *Rice v. Merchants National Bank* (1991), 213 Ill. App. 3d 790, 797, 572 N.E.2d 439; *Cuellar v. Hout* (1988), 168 Ill. App. 3d 416, 419, 522 N.E.2d 322; *People v. Johnigk* (1982), 111 Ill. App. 3d 941, 944, 444 N.E.2d 739.

■ Finally, defendant asserts that Dr. Benson's opinion, that defendant was under the influence of alcohol at the time of the collision, was inadmissible because it could not aid the trier of fact. Defendant's argument is waived since he did not object at trial. *Enoch*, 122 Ill. 2d at 186.

Based on the foregoing, the circuit court judgment is affirmed.

Affirmed.

RIZZI and TULLY, JJ., concur.