THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JEN-
NARAH WILLIAMS, Defendant-Appellant.

Second District    No. 2—93—0822

Opinion filed September 27, 1994.

Edward E. Robinson, of Edward E. Robinson, Ltd., of Chicago, for appellant.

Michael J. Waller, State's Attorney, of Waukegan (William L. Browers, Robert J. Biderman, and David E. Mannchen, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE BOWMAN delivered the opinion of the court:

Defendant, Jennarah Williams, was convicted by a jury of two counts of resisting arrest and two counts of criminal battery. On one count of resisting arrest the court sentenced defendant to one year of court supervision, a $100 fine, and 50 hours of community service. On one count of battery she was sentenced to a one-year conditional discharge, to be served concurrently with her court supervision for resisting arrest; a fine of $100; and 50 additional hours of community service. On appeal defendant raises numerous discovery and evidentiary issues, claims the trial court was biased against her, and asserts the trial court erred in (1) denying her motion to quash arrest and suppress evidence, (2) denying her motion for mistrial, (3) refusing a jury instruction tendered by her, and (4) allowing the State to refile charges previously nol-prossed. We affirm.

On the morning of December 23, 1991, defendant was driving her automobile eastbound on Grandville Avenue in a residential area of the Village of Gurnee. As defendant approached an intersection, Gurnee police officer Kotrba was pulling up to the stop sign for the cross street of the intersection. The officer observed that there was no

license plate on the front of defendant's auto. Since Grandville did not have a stop sign, defendant proceeded to enter the intersection even though, according to defendant's testimony, Kotrba drove in such a way that she was afraid he would not stop. After defendant passed by him, Kotrba observed that her rear license plate reflected an Illinois registration. Kotrba then turned onto Grandville and followed defendant but did not speed up or immediately activate his siren or lights, or otherwise signal to defendant to stop. A number of blocks, and several turns and stops later, Kotrba stopped defendant. Defendant testified that the police officer was directly behind her the whole time he followed her, while Kotrba said he delayed activating his lights until he caught up with defendant.

According to defendant's testimony, Kotrba did not say anything to her at first. He just walked toward the front of her car. She asked if there was something wrong, but Kotrba did not answer. He walked around to the back of the car and finally came back to the driver's window and told her she had no front license plate and had failed to signal a left turn she made off Grandville. The officer asked for her name and address rather than her driver's license. Kotrba contradicted this testimony, claiming he asked defendant for her license six times. Defendant said she did not give the officer her name because she was puzzled and confused as to why he had not stopped her sooner and by his conduct after the stop. Because she would not give her name, Kotrba called for backup and, a few minutes later, several patrol cars converged on the area.

Defendant opened her car door to see what was going on. A man dressed in plain clothes spoke with Kotrba and then came over to her car and said, "baby girl, you can't do this." Although her testimony was later impeached, defendant stated during direct examination that the man did not identify himself as a police officer. She found out later that the man was Gurnee Police Chief John Ward. After a few moments defendant started to close the car door against the cold air, but Ward stopped her, said that he had had "enough of this," and reached through the door and grabbed defendant by the right wrist. Defendant, in turn, grabbed Ward's wrist, and Ward told her to turn him loose. When defendant immediately demanded that she also be let go, Ward released her wrist. Defendant then gave Ward her driver's license and stepped out of her car. The license turned out to be suspended, so the police told her they were going to take her to the station. A female officer, Sergeant Kincaid, put handcuffs on defendant, and she was placed in the back of a squad car.

The respective testimony of Officer Kotrba and Chief Ward regarding the occurrence leading to the charges against defendant

was very similar and revealed the following sequence of events. When he arrived at the scene, Chief Ward squatted or kneeled down next to the open window of defendant's car, showed her his badge, identified himself as chief of police, and asked if there was a problem. She responded that Kotrba had pulled her over for no reason. Ward told her that Kotrba stated she turned without signaling and had no front license plate. He explained that Kotrba needed her driver's license to issue two citations, and she would then be allowed to leave. Ward asked for defendant's driver's license three or four times before Kotrba told him the license of the registered owner of the car had been suspended. The description of the registered owner matched that of the defendant. Defendant refused still another request for her driver's license, commenting to the effect that she had done nothing wrong and that Officer Kotrba was picking on her.

The officers then told defendant that they were going to have to place her under arrest for driving on a suspended license. Still insisting she had done nothing wrong, defendant said she was not going anywhere and, according to Kotrba, locked her car door. Ward then reached through the open window to open the door from the inside, and defendant began to roll up the window. Kotrba put his weight on the window to stop it, and defendant grasped Ward's hand, scratching his palm deeply enough to draw blood. Ward released the inside doorknob and grabbed hold of defendant's wrist to restrain her. Kotrba then also reached inside the vehicle to try to unlock the door, but defendant slapped his hand away. On a second try, Kotrba successfully opened the car door, and the two officers stepped away from the vehicle. At that point defendant offered her driver's license which, indeed, had been suspended. She then got out of her car and was placed in the back of one of the squad cars until Sergeant Kincaid, who had been called to the scene by Kotrba and Ward, arrived. Kincaid testified that defendant was upset in that she seemed nervous and angry about the whole situation. Defendant was not uncooperative and seemed to Kincaid to be confused about what was going on.

Defendant was issued traffic citations for the missing license plate, for driving with a suspended driver's license, and for failure to signal a left turn. She was also served with a complaint for criminal battery. The traffic matters were resolved in due course in January 1992, and the battery charge was dismissed for want of prosecution. The resisting arrest charge in this case was initially filed under a citation but was dismissed in January 1992 for failure to file formal charges. An information on a charge of battery was subsequently filed and docketed but nol-prossed in July 1992. The informations in

this case, for battery and resisting arrest, were filed in August 1992. At some time after the resisting arrest charge was initially filed, defendant wrote a letter of complaint concerning the incident to the Gurnee police department. She also filed a complaint with the sheriff's department of Lake County. Following her conviction and the denial of her post-trial motion, defendant filed this appeal.

■ Defendant presents 11 issues for our consideration. The bulk of these involve discovery and evidentiary rulings by the trial court, and the remainder assert a variety of errors. However, with regard to a number of issues, defendant's brief totally fails to comply with the requirements set forth by our supreme court. Supreme Court Rule 341(e)(7) (134 Ill. 2d R. 341(e)(7)) clearly states that the argument section of appellant's brief "shall contain the contentions of the appellant and the reasons therefor, with citation of the authorities and the pages of the record relied on. Evidence shall not be copied at length, but reference shall be made to the pages of the record on appeal *** where evidence may be found." Each of defendant's issues I, II, IV, VI, and XI consists of one paragraph of discussion, with no references to the pages of the record relied upon, and no citation to any authority. Moreover, the discussions do not clearly set forth defendant's contentions or the reasoning underlying those contentions. Rather, some of them state a few facts and then announce a conclusory allegation, but do not show how the conclusion was reached. Others simply make bald assertions or accusations with no support at all. Points raised but not argued or supported by citation to relevant authority do not satisfy the requirements of Supreme Court Rule 341(e)(7) (134 Ill. 2d R. 341(e)(7)) and may be deemed waived. (*People v. Patterson* (1992), 154 Ill. 2d 414, 455.) A contention on appeal will be waived when it is supported only by conclusory statements, with no citation to authority. (*People v. Carpenter* (1992), 228 Ill. App. 3d 899, 904-05.) The appellate court is not a depository in which defendant may dump the burden of argument and research. (*People v. Payton* (1991), 208 Ill. App. 3d 658, 663.) Rather, we are entitled to a well-reasoned argument, along with the authority for such argument. (134 Ill. 2d R. 341(e)(7); *People v. Ethridge* (1993), 243 Ill. App. 3d 446, 470.) In light of defendant's failure to comply with the rule, we consider issues I, II, IV, VI, and XI waived.

■ Defendant fares little better with regard to issue III. She claims she was improperly denied an opportunity to present evidence regarding Officer Kotrba's training and disciplinary record. While defendant does not make it clear, it appears the trial court denied defendant's motion to compel discovery of this information. Her argument seems to be that Kotrba's allegedly odd behavior before

and in the course of the stop may have reflected a serious discipline problem, and he, wishing to avoid another disciplinary incident, may have been motivated to testify falsely regarding the stop.

Defendant cites *People v. Phillips* (1981), 95 Ill. App. 3d 1013, in support of her argument. *Phillips,* however, did not present the problem that exists in this case. One of the issues in *Phillips* was whether the officer's account of a shooting, in which he was involved, was true. Evidence of the officer's prior suspensions was improperly excluded since it was relevant to the officer's motive to testify falsely in order to avoid still another suspension. In contrast, despite defendant's effort to dwell on it, in this case the issue is not whether Kotrba told the truth about the manner in which he conducted the stop of defendant. The issue is whether defendant committed the offenses of battery and resisting arrest. Defendant does not explain how Kotrba's veracity about the procedures followed during the stop is relevant to the question of her guilt or innocence. Absent a showing of relevance, an order compelling discovery of the information sought by defendant would have amounted to nothing more than a fishing expedition. In deciding a discovery motion, it is the trial court's task to determine the relevance and materiality of the materials sought. (*People v. Gomez* (1992), 236 Ill. App. 3d 283, 292.) The trial court has broad discretion in ruling on issues of relevance and materiality and its determination will not be disturbed absent an abuse of discretion. (*Gomez,* 236 Ill. App. 3d at 292.) We find no such abuse in the trial court's denial of defendant's discovery motion.

The reasoning that applies to issue III also applies to issue X. Defendant claims the court erred when it quashed defendant's subpoena for a variety of police department records and records from the auto garage which towed defendant's car. We note that the State initially responds that this matter does not involve a subpoena, but only the motion to compel discovery discussed above. However, whether we consider this to be a case of a subpoena or a discovery motion does not matter. Either way, defendant cannot prevail.

■ As just discussed, whether discovery should be allowed is dependent upon the relevance and materiality of the information to be discovered. Similarly, the issuance of a pretrial subpoena requires, among other things, that the documents sought be evidentiary and relevant. (See *People v. Shukovsky* (1988), 128 Ill. 2d 210, 225, citing *United States v. Nixon* (1974), 418 U.S. 683, 699-700, 41 L. Ed. 2d 1039, 1059, 94 S. Ct. 3090, 3103; *People ex rel. Fisher v. Carey* (1979), 77 Ill. 2d 259, 269.) Once again, defendant fails to demonstrate how any of the documents she sought was relevant to the issues before the jury. She seems to claim she had a right to the information, but

absent relevance to the issues, the allowance of the subpoenas would have amounted to another mere fishing expedition. (See *Shukovsky*, 128 Ill. 2d at 225.) The trial court did not abuse its discretion on this matter.

In issue V defendant contends that the evidence raised the possibility that, even if she resisted arrest, her conduct was justified on the ground that she was acting reasonably to defend herself. She correctly points out that a defendant is entitled to jury instructions which present her theories of the case when the evidence supports such theories, and even very slight evidence upon a given theory will warrant the giving of an instruction. (*People v. Lyda* (1989), 190 Ill. App. 3d 540, 544.) She concludes that the trial court improperly refused to give the jury the following instruction:

"A person is justified in the use of force when and to the extent that he reasonably believes that such conduct is necessary to defend [(himself)***] against the imminent use of unlawful force." (Illinois Pattern Jury Instructions, Criminal, No. 24—25.06 (3d ed. 1992) (hereinafter IPI Criminal 3d).)

The State responds that the self-defense instruction was properly rejected since there was no evidence to support it. We agree.

In Illinois, one may not use force to resist arrest by a known peace officer, even if the arrest is unlawful. (Ill. Rev. Stat. 1991, ch. 38, par. 7—7 (now 720 ILCS 5/7—7 (West 1992)); *People v. Bailey* (1982), 108 Ill. App. 3d 392, 398.) An exception is made to this rule for situations in which an officer uses excessive force. Use of such force invokes the right of self-defense. (Ill. Rev. Stat. 1991, ch. 38, par. 7—1 (now 720 ILCS 5/7—1 (West 1992)); *Bailey*, 108 Ill. App. 3d at 398.) Hence, an instruction on self-defense is required in a resisting arrest case only when the defendant is not aware of the police officer's identity or there is evidence of excessive force on the part of the arresting officer. According to defendant's argument, the evidence showed that she did not know Ward was a police officer and when she scratched his hand and pushed away Office Kotrba's hand she was only trying to defend herself from what she characterizes as the "bizarre and offensive conduct of a police officer and his firend [*sic*] in a trench coat." Specifically, she cites her testimony that Chief Ward, who was dressed in plain clothes, never identified himself as a peace officer or told her she was being placed under arrest, but reached into her car and grabbed her wrist, as though to pull her from the car, saying he was "tired of this." Once again, it is not clear from defendant's brief, but she appears to argue that, because they allegedly would not tell her what was going on, and then grabbed her wrist, she was fearful that the uniformed officer and the other man

might harm her, and she felt it necessary to defend herself. The record does not support this argument.

■ According to defendant's own testimony, she heard Kotrba say into his radio that he had a situation. Two or three minutes later several patrol cars converged on the area with their lights flashing, she saw Kotrba talking to Ward, and Ward approached her directly. This evidence reflects that Ward was also a police officer and does not support defendant's implication that she reasonably feared Ward might be a stranger acting in concert with Kotrba to use unlawful force against her. More significantly, there is no evidence the police used excessive force. Defendant testified that all Ward did was reach through the car door and grab her by the wrist in order to get her out of the car. Ward acted only after defendant had repeatedly failed to respond to questions and, according to Ward, after she had scratched his hand. Even then, when defendant took hold of Ward's wrist and told him to let her go, Ward did so.

Finally, the evidence does not demonstrate that defendant was in fear of the police or the possible use of excessive force. When Ward grabbed her wrist, she responded immediately by grabbing his wrist with her other hand. When told to let go, she demanded to be let go herself. Although defendant expressed that she was surprised, confused, and did not understand what was happening during the incident, she never testified that she was afraid. Sergeant Kincaid also related that defendant seemed confused and nervous. While Kincaid recounted her impression that defendant seemed angry, the officer never mentioned that defendant appeared fearful. This evidence does not reflect a person acting out of fear of the police officers. All in all, the evidence was not sufficient to require a self-defense instruction, and the trial court did not err in refusing to give one. We agree with the State that the cases cited by defendant, *People v. Veatch* (1986), 145 Ill. App. 3d 23, and *People v. Lyda* (1989), 190 Ill. App. 3d 540, involved truly brutal and excessive conduct by police, which warranted an instruction on defense of others. The evidence here of excessive force does not even come close to being comparable.

■ There is no merit to defendant's issue VII. She claims she was denied a fair trial due to the trial court's bias and hostility towards her. However, we have examined the report of proceedings of the trial and find that it does not support this contention. Defendant's sweeping statement that "the record speaks for itself" is of little help in our review. More specifically, what defendant calls a "severe admonishment" occurred as a result of a dialog in which defense counsel and the trial judge were talking one over the other. The court's comments amounted to little more than a direction to counsel

not to talk when the court is talking and a recitation by the court of the very practical fact that, when counsel and the court are talking at the same time, the court reporter will take down only the court's remarks. We doubt that such brief remarks of the sort made here are fairly characterized as a "severe admonishment," as asserted by defendant. In any event, they certainly do not reflect any court bias against defendant. Moreover, they were made outside the presence of the jury and could not have affected the jury's verdict.

Defendant also focuses on a threat by the court to cite counsel for contempt. The court and both counsel had just completed an extended discussion concerning defense counsel's desire to question Chief Ward on a number of topics. The court held that, among other subjects, counsel could not ask about police department policies regarding traffic stops. The jury was brought back in, and the very first question counsel asked the chief concerned such policies. At the bench the court asked counsel what he was doing, reminding him that he had been told he could not ask that question. Counsel said that was not his understanding, and the following dialog ensued:

"THE COURT: What do you think I just said the last fifteen minutes.

MR. ROBINSON: Well, you certainly covered a lot of points.

THE COURT: Am I too confusing for you?

MR. ROBINSON: No.

THE COURT: Do you want me to write them down for you?

MR. ROBINSON: I don't think so.

THE COURT: Counsel, if you don't abide by the rulings of the Court, I'm going to hold you in contempt of Court. This is the last warning I'm giving you. Do you understand me?"

In our view this record reflects, at worst, a deliberate defiance of the rulings of the court by defense counsel, or, at the very least, a callous disregard for the authority of the court. Under the circumstances, the court was justified in warning counsel. In no way do we perceive the court's comments as a reflection of any continuing bias or hostility toward defendant. Defendant makes the allegation that the court never made any comparable threat against the prosecutor for similar conduct, but provides no citation to the record where we might find an example of such similar conduct. Finally, similar to the admonishment, the contempt threat occurred at the bench, outside the hearing of the jury. Accordingly, there is no basis for defendant's claim that the conduct of the trial court resulted in an unfair trial.

■ In the eighth issue defendant posits that the trial court erred in allowing the State to refile charges against her that had been

previously nol-prossed and to add two new counts. Defendant contends that the charges, which she characterizes as capricious or vexatious, were made in a context that strongly implied retaliation against her for filing complaints of police misconduct with the police department and the sheriff's office. However, after defendant recites that she advised the trial court about this matter, she adds that the court was not interested and "the matter was dropped by *** counsel as a futile exercise." Thus, it appears defendant simply did not pursue this issue in the trial court where, as the State points out, an evidentiary hearing could have been held and a record established. The party making an assertion of error is responsible for preserving the error and presenting a sufficient record for review. (*People v. Turner* (1993), 249 Ill. App. 3d 474, 481-82.) Moreover, as a general rule arguments raised for the first time on appeal are deemed waived. (*People v. Wych* (1993), 248 Ill. App. 3d 818, 825.) Accordingly, we consider this issue waived.

In the only issue remaining, issue IX, defendant urges that the trial court erred in denying her motion to quash arrest and suppress evidence. The motion was based on the undisputed fact that the arrest, and the conduct which resulted in the charges in this case against defendant, took place outside the Village of Gurnee. Defendant correctly points out that the facts of this case are not exactly the same as those in *People v. Carraher* (1990), 199 Ill. App. 3d 965, or *People v. DeBlieck* (1989), 181 Ill. App. 3d 600, cases evidently relied upon by the trial court. On the other hand, defendant cites no authority whatsoever for the contention that her arrest should have been quashed. In fact, defendant seems to attack not so much the arrest itself, but the resisting and battery charges, since those arose entirely outside the Village of Gurnee and, therefore, outside Kotrba's jurisdiction. We find no merit in this argument.

The finding of the trial court relative to a motion to quash an arrest will not be disturbed on review unless it is manifestly erroneous. (*People v. Villarreal* (1992), 152 Ill. 2d 368, 373.) The trial court here made no such error. We recently held in *Village of Prairie Grove v. Sutton* (1994), 260 Ill. App. 3d 682, that, under *Carraher*, police officers could arrest motorists outside the officers' jurisdictions for offenses committed inside those jurisdictions. (See *Carraher*, 199 Ill. App. 3d at 970-71; see also *People v. Pollard* (1991), 216 Ill. App. 3d 591; *People v. Thompson* (1991), 215 Ill. App. 3d 514.) In *Carraher* we had relied on section 107—5(c) of the Code of Criminal Procedure of 1963, which permits police to make an arrest "anywhere within

the jurisdiction of this State." (Ill. Rev. Stat. 1991, ch. 38, par. 107—5(c) (now 725 ILCS 5/107—5(c) (West 1992)).) Defendant nowhere contests that there was no license plate on the front of her car or that her license was suspended at the time she was driving within Gurnee and was observed by Officer Kotrba. Hence, she does not really challenge her arrest based on the traffic violations. Rather, her argument seems to be that evidence of resisting arrest and criminal battery should have been suppressed since those offenses were not committed within the jurisdiction of the Gurnee police department. Although defendant does not present any argument or authority for her position, we will briefly address the issue.

■ All of defendant's offenses occurred as Kotrba and Ward were attempting to make a valid, albeit extrajurisdictional, arrest. Defendant resisted and committed battery in the course of that very arrest. It is not as though defendant's improper conduct was totally separate from and unrelated to the situation in which she found herself. On the contrary, her offenses were integrally bound up with the arrest process. Under these circumstances, there was no reasonable justification for the trial court to suppress the challenged evidence. To say that evidence of a defendant's offenses—offenses occurring in the midst of defendant's valid, extrajurisdictional arrest—is inadmissible merely because the conduct occurred outside the arresting officer's jurisdiction, is an absurd result, and certainly not one intended by the legislature. If it were otherwise, police could execute valid arrests outside their jurisdiction, but be unable to thwart unlawful conduct occurring during the arrest precisely because it occurred outside their jurisdiction.

Consonant with our conclusion is the State's response that granting defendant the relief she seeks would be inconsistent with the principle that a defendant may not use force to resist arrest even if she believes the arrest to be invalid and it is, in fact, unlawful. (See Ill. Rev. Stat. 1991, ch. 38, pars. 7—7, 31—1 (now 720 ILCS 5/7—7, 31—1 (West 1992)); *Villarreal*, 152 Ill. 2d at 374-75.) In the scenario urged by defendant, an offender could forcibly resist an arrest, valid or otherwise, with impunity, solely because the resistance occurred outside the jurisdiction of the arresting officer. Such a result conflicts with the clear intent of the statute and is unacceptable. In sum, we opine that when a defendant's offenses are so clearly related to a valid arrest as those which occurred here, evidence of those offenses is admissible, even though they may have been committed outside the jurisdiction of the arresting officer.

For all the reasons set forth above, we affirm the judgment of the Lake County circuit court.

Affirmed.

DOYLE, J., concurs.

JUSTICE QUETSCH, dissenting:
I respectfully dissent from the majority decision as to issue V (the failure of the trial court to give defendant's tendered instruction on a defendant's justified use of force). Illinois Pattern Jury Instructions, Criminal No. 24—25.06 (3d ed. 1992).

The majority properly acknowledges the defendant is correct in asserting that "a defendant is entitled to jury instructions which present her theories of the case when the evidence supports such theories, and even *very slight evidence upon a given theory* will warrant the giving of an instruction." (Emphasis added.) (267 Ill. App. 3d at 88; *People v. Lyda* (1989), 190 Ill. App. 3d 540, 544; *People v. Veatch* (1986), 145 Ill. App. 3d 23, 28-30.) Thus, any evidence that Ms. Williams believed that her conduct was necessary to defend herself against the imminent use of unlawful force requires the giving of the instruction in dispute here.

*Lyda* also held that a trial court is not allowed to decide credibility or weigh evidence which would support a claim of self-defense, but may only determine whether there is *any* such evidence. (190 Ill. App. 3d at 544-45.) Curiously, and contrary to the clear standards of *Lyda*, the majority reviews, weighs, and determines credibility of the evidence and concludes that "there was no evidence to support" the giving of the instruction. Thus, not only did the trial court invade the province of the jury in this cause, but also our reviewing majority does the same and compounds the error, resolving questions of fact regarding the defendant's knowledge, belief, and the reasonableness of her belief, and usurping a task properly reserved for a jury of citizens. *Lyda*, 190 Ill. App. 3d 540.

I disagree that there was *no* evidence to support the instruction. It is not disputed that Ward was in civilian clothing when he approached the defendant's car and grabbed her by the wrist. Defendant said that Ward did not identify himself as a peace officer or exhibit his badge, but merely said "baby girl, you can't do this." She was confused, according to an officer bystander. How was defendant to *know* that Ward was a policeman and not a lay interloper? *Knowledge* by the defendant that she was resisting a *peace officer* is a required element of the State's proof in the charge of resisting arrest

(Ill. Rev. Stat. 1991, ch. 38, par. 31—1 (now 720 ILCS 5/31—1 (West 1992))); and reasonable belief of necessity is an element in a defendant's affirmative defense (Ill. Rev. Stat. 1991, ch. 38, par. 7—1 (now 720 ILCS 5/7—1 (West 1992))).

There *was* evidence to support defendant's theories of both not knowing of Ward's status as a peace officer and her belief in the necessity of her self-protection. The weight and credibility of that evidence was for a jury, not for the trial judge or this court. *People v. Veatch* (1986), 145 Ill. App. 3d 23, 28-30.

If the State was allowed to prove and argue defendant's knowledge of Ward's status (by direct but contradicted evidence that he identified himself and showed his badge, and circumstantially by the surrounding events) and to have *its* instructions given, should not defendant's instruction on her defense of justifiable use of self-protecting force based on a reasonable belief also have been given? The answer is "yes." *Lyda*, 190 Ill. App. 3d 540; *Veatch*, 145 Ill. App. 3d 23.

The trial court (and this reviewing court's majority) improperly weighed the evidence and invaded the province of the jury, by, on its own, resolving questions of fact regarding defendant's knowledge and belief and the reasonableness of that belief. The majority, by its decision, endorses the trial judge's usurping of the jury's role. On this issue, the trial court's only function and duty was to determine whether there was *any* evidence to support defendant's theory of justifiable use of self-protection and, if so, to give the disputed instruction to guide the jury in its deliberations. *Lyda*, 190 Ill. App. 3d 540; *Veatch*, 145 Ill. App. 3d 23.

Should this court close its eyes to the current and growing incidence of criminals impersonating police officers and stopping drivers on our roadways for various illicit purposes? I think not.

Inasmuch as there clearly was some evidence to support the giving of the instruction (as shown by the majority's own statement of facts), the trial court exceeded its authority and misused its discretion. The defendant's convictions should be reversed and the cause remanded for a new and fair trial.